**Norval J. ELKINS, Claimant–Appellant,**

v.

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 00–7023.**

United States Court of Appeals, Federal Circuit.

Oct. 13, 2000.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

David Feniger, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; Kirk T. Manhardt, Assistant Director; and Elizabeth M. Hosford, Attorney.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.

Opinion for the court filed by Circuit Judge MICHEL. Dissenting opinion filed by Senior Circuit Judge FRIEDMAN.

MICHEL, Circuit Judge.

Norval J. Elkins appeals a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court"). In a one-judge memorandum decision, the Veterans Court: 1) affirmed the decision of the Board of Veterans' Appeals ("Board" or "BVA") denying Elkins' claim for service connection for headaches; 2) dismissed his appeal with respect to an alleged neck injury because the BVA did not decide the matter below; and 3) vacated the Board's decision denying service connection for a back condition and remanded the back injury claim for adjudication in light of what it held was new and material evidence. *Elkins v. West,* No. 98–1701, 1999 WL 699520 (Vet.App. Aug. 31, 1999) (*Elkins II*). On appeal, Elkins does not challenge the remand. We hold that the Veterans Court erred in affirming the denial of the headache claim because it relied on a finding as to well groundedness different from that cited by the BVA and erroneously characterized Elkins' neck injury argument as a new claim, never adjudicated by the BVA and thus beyond the court's jurisdiction. Accordingly, we vacate the decision of the Veterans Court affirming the BVA denial, reverse its decision regarding lack of jurisdiction, and remand the case with instructions to remand to the BVA.

## BACKGROUND

Elkins served on active duty in the United States Air Force from January 1950 to September 1953. In March 1951, Elkins was involved in an auto accident. Between October 1952 and December 1952, he was treated for headaches on three occasions. When he was examined at the time of his separation from military service, Elkins

reported that he suffered from headaches and back pain.

In late 1953, Elkins filed with the Veterans Administration Regional Office ("RO") a claim for service connection for various injuries suffered as a result of the 1951 accident, including back pain, scars to the face, and head injury. At that point a Veterans Administration doctor examined him. After reviewing the doctor's report, the RO awarded benefits for scars on the face, but denied benefits for all other injuries.

In April 1990, Elkins attempted to reopen his claim for service connection as to the back injury based on "new and material evidence." Later in 1990, he amended the claim to include service connection for headaches. The RO denied this claim entirely in March 1991, and Elkins filed a notice of disagreement ("NOD"). In response to the NOD, the Department of Veterans Affairs ("DVA")[1] generated a Statement of the Case indicating that Elkins' appeal to the Board concerned a claim for back injury and headaches. In his substantive appeal to the BVA, Elkins referenced back problems and headaches, but not neck or cervical injury. The BVA remanded the claim with directions for the RO to obtain medical and social security records and ordered the DVA to provide Elkins with orthopedic and neurological examinations. After the RO denied his claims again, Elkins appealed back to the BVA. Based on the reports of the examinations and records from Elkins' private doctors, the BVA determined that Elkins failed to submit new and material evidence regarding his back condition. In addition, the BVA found that he had not submitted a well grounded claim for headaches because he had not provided competent medical evidence of a current headache condition. In support of its conclusion that Elkins does not currently suffer from headaches, the BVA quoted a 1994 report

from a neurological examiner, which states:

> Regarding headaches, [the veteran] does not have headaches. However, what he was interpreting as headaches was actually cervical pain or neck pain, and indeed he has mild limitation of range of motion and it would not be unreasonable to connect mechanical back pain and muscle spasms with cervical pain and spasms.

*In the Appeal of Norval J. Elkins,* No. 92–04590 (BVA July 16, 1998) (*Elkins I* ), slip op. at 17.

Elkins appealed to the Veterans Court, arguing that the BVA erred in denying service connection for headaches and back injury and that it further erred in not recognizing, based on the evidence presented, a well grounded claim for neck pain. With respect to the back condition, the Veterans Court remanded to the BVA for further adjudication. The court then determined, contrary to the BVA, that Elkins had indeed submitted competent medical evidence of a current headache condition but ruled nevertheless that he had failed to establish a well grounded claim "because there is no medical evidence in the record which establishes a medical nexus between his headaches and his military service." *Elkins II,* at *4. Finally, the court dismissed Elkins' claim with respect to neck injury for lack of jurisdiction because Elkins had not filed a claim or NOD alleging neck injury, and because neck injury, per se, was never incorporated into the BVA's statements of the case, raised in the BVA appeals, or discussed in the BVA decision. *See Elkins II,* at *4. Elkins timely appealed the decision as to the headaches and neck injury to this court. The remand for back injury is not before us.

## DISCUSSION

### I.  Jurisdiction

■ On August 31, 1999, the Veterans Court affirmed the BVA's denial of Elkins'

---

1. The Veterans Administration was renamed the Department of Veterans Affairs in 1988.

Department of Veterans Affairs Act, Pub.L. No. 100–527, 102 Stat. 2635 (1988).

claim for headaches as not well grounded, dismissed his newly asserted claim for neck injuries for lack of jurisdiction, and remanded his previously denied back injury claim to the BVA for further proceedings because of new and material evidence. The first two decisions are challenged in this appeal. A threshold question in this case is whether this court has jurisdiction to hear Elkins' appeal when the Veterans Court has rendered a final decision with respect to only two of the three issues or claims presented to it by Elkins in an appeal from a single Board decision. Although upon our request for supplemental briefing on this issue both parties agreed we do have jurisdiction, our independent analysis is still required.

A. The jurisdiction of this court over appeals from the Veterans Court is governed by 38 U.S.C. § 7292, which provides in relevant part that "[a]fter a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision." 38 U.S.C. § 7292. This jurisdictional provision leaves open the question of whether the Veterans Court must render a "final" decision disposing of all the claims or issues presented to it before we may exercise appellate jurisdiction.

■ Had Elkins appealed a similar decision to us from a district court, there would be little question that we would lack jurisdiction. Under the "final judgment rule," a party may not appeal district court rulings until the trial court has rendered a decision that " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). In appeals from district court rulings, all claims for relief must be resolved before an appeal on any claim may be taken. *See id.; see also* Fed.R.Civ.P. 54(b) (providing that, in the

absence of an express determination by a district court, when more than one claim for relief is presented in an action, the parties shall not terminate the action prior to the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties). The final judgment rule serves a number of important purposes, including minimizing appellate court interference with lower court proceedings and promoting efficient judicial administration. *See Firestone*, 449 U.S. at 374, 101 S.Ct. 669. The collateral order doctrine, not applicable here, is an exception to this general rule.

■ B. This court has recognized, however, that there is not always "precise congruence between 'the classical jurisdictional requirements' applied to appeals from district courts and the jurisdictional standards applicable to review of administrative proceedings." *Dewey Electronics Corp. v. United States*, 803 F.2d 650, 654 (Fed.Cir.1986). The relevant consideration, in determining whether an administrative adjudication is sufficiently "final" is " 'whether the process of the administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.' " *Id.* (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)).

This court has held, when reviewing decisions of agency boards of contract appeals, that a litigant's individual claims for relief may, in certain circumstances, be separable for purposes of appellate review. *See Dewey*, 803 F.2d at 653–54; *see also Kinetic Builder's Inc. v. F. Whitten Peters*, 226 F.3d 1307, 1312 (Fed.Cir.2000); *Orlando Helicopter Airways, Inc. v. Widnall*, 51 F.3d 258, 261 (Fed.Cir.1995). In *Dewey*, the contracting officer had constructively denied liability on what were deemed to be nine separate claims by failing to consider and act on them in a timely

manner. The disallowed claims were then appealed to the Armed Services Board of Contract Appeals ("ASBCA"), which rendered its decision sustaining the disallowance as to four claims and determining that the government was liable on the other five, which were remanded to determine the amount of the government's liability. Dewey then appealed to this court from the ASBCA's decision as to the four disallowed claims. We held that the ASBCA's decision was final as to the four claims appealed and that the appeal should not be deferred pending resolution of quantum for the five claims remanded. *See Dewey*, 803 F.2d at 653–54. We reasoned that applying a rigid concept of finality would reduce the "efficiency and flexibility generally associated with administrative proceedings," *see id.* at 656, and that such an approach would contravene the legislative intent of Congress in enacting the Contract Disputes Act, which was designed " 'to provide a swift, inexpensive method of resolving contract disputes.' " *Id.* at 655 (quoting S. Rep. No. 1118, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 5235, 5246).

Subsequent cases have reaffirmed that *Dewey* is to be applied only when the exercise of our jurisdiction will not "disrupt the orderly process of adjudication" of the administrative tribunal. *Orlando Helicopter*, 51 F.3d at 261 (quoting *Port of Boston Marine Terminal Ass'n*, 400 U.S. at 71, 91 S.Ct. 203) (exercising jurisdiction over ASBCA decision that denied recovery of costs under the sovereign acts doctrine, noting that, although the ASBCA had withheld ruling on costs incurred under stop work order, the "sovereign acts defense is an issue wholly separate and distinct from any issues which may remain before the board"); *Kinetic Builder's*, 226 F.3d at 1313–14 ("We think the better rule is that where separate claims by definition focus on a different or unrelated set of operative facts, and where issues of both liability and quantum have been assumed and determined, the decision of the Board as to the non-remanded claims is to be deemed final for the purpose of conferring appellate jurisdiction on this court.").

C. We have *sub silentio* applied the methodology of *Dewey* in appeals from the Veterans Court. In *Grantham v. Brown*, 114 F.3d 1156 (Fed.Cir.1997), a veteran had presented two claims for benefits to the Veterans Court: a left eye disability claim and a pension claim. The Veterans Court remanded the pension claim for additional proceedings and dismissed Grantham's left eye claim for lack of jurisdiction. *See Grantham v. Brown*, 8 Vet.App. 228 (1995). We noted that the Veterans Court's decision was non-final with respect to Grantham's remanded pension claim, and we found that we lacked jurisdiction over that portion of Grantham's appeal. *See Grantham*, 114 F.3d at 1159. We proceeded to exercise jurisdiction, however, over Grantham's appeal of the dismissal of his left eye claim. *See id.* at 1158. Although we did not expressly confront the issue as to whether the Veterans Court's decision was "final" for the purposes of the final judgment rule, or whether the claims were separable on appeal, our decision to exercise jurisdiction over his left eye claim is illustrative of our court's practice of treating a veteran's distinct claims as separable on appeal.

This court has consistently recognized that the various claims of a veteran's overall "case" may be treated as distinct for jurisdictional purposes. In *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed.Cir.2000), we held that a "decision" of the BVA, for the purposes of the Veterans Court's jurisdiction, is the decision with respect to the "particular benefit request" sought by the veteran, and thus that the Veterans Court had jurisdiction to hear new arguments raised by a veteran on appeal, so long as they related to the particular claim for benefits that was adjudicated by the BVA. Similarly, in *Ledford v. West*, 136 F.3d 776, 779 (Fed.Cir.1998), we held that a veteran's claims relating to the termination of his individual unemployability benefits had

to be litigated separately from his claims regarding the propriety of the effective date of his benefits, as the BVA's decision only related to the latter claim. Moreover, in *Grantham,* 114 F.3d at 1158, we recognized that even the different elements of a single claim might necessarily be litigated separately, and thus that the Veterans Court had jurisdiction to consider a veteran's appeal of an adverse decision relating to the compensation level for his left eye disorder (one element of his claim), even though the veteran's appeal of a decision relating to service-connectedness of the same disorder (another element of his claim) was untimely. And, in *Barrera v. Gober,* 122 F.3d 1030, 1032 (Fed.Cir.1997), we recognized that "a veteran's overall claim, or case, for benefits is comprised of separate issues, and that the Court of Veterans Appeals has jurisdiction to consider an appeal concerning one or more of those issues, provided an NOD has been filed after the effective date of the Veterans Judicial Review Act with regard to the particular issue." In that case, we ruled that although a veteran may have filed a pre-Act NOD with respect to a particular issue, the Veterans Court may still exercise jurisdiction over a different issue on which an NOD has been filed after the effective date of the Act. *See id.*

D. Our decisions are consistent with the approach adopted by the Veterans Court in treating a veteran's different claims as separately appealable matters. *See Hamilton v. Brown,* 4 Vet.App. 528, 544 (1993) (holding that a veteran's claims for osteoporosis, osteomyelitis, and premature aging, which remained pending before the RO during appeal of additional claims, could be separately appealed after the filing of a subsequent NOD); *Ryan v. Derwinski,* 2 Vet.App. 568, 569–70 (1992) (exercising jurisdiction over one of a veteran's claims, although a closely related claim was still pending before the RO). Although not binding on us, these decisions are instructive of the manner in which a veteran's separate claims may be appealed sequentially.

E. Our decisions reflect a fundamental difference in the structure of a single "case" between veterans litigation and district court proceedings. In a district court, a plaintiff must present all claims for relief arising from an event in a single complaint, and these claims are handled as integral parts of a single case. Except in limited circumstances, they must be tried together and appealed all at once. *See* Fed.R.Civ.P. 54(b). As the above decisions represent, however, there is no requirement that a veteran's various claims for relief be simultaneously filed and adjudicated, either upon initial review or on appeal. Rather, we have recognized that the unique statutory process of adjudication through which veterans seek benefits may necessarily require that the different issues or claims of a case be resolved at different times, both by the agency of original jurisdiction and on appeal.

It appears that Elkins would have been free to pursue his claims and arguments regarding his back, neck, and headache conditions separately and sequentially, and that he could have appealed each to the Veterans Court, and subsequently to this court, as a separate "case." Elkins, however, presented his claims to the Veterans Court in a single appeal. We must decide whether Elkins is thereby foreclosed from obtaining review in this court as to his headache claim and neck argument due to the fact that his back claim, which was simultaneously pending before the Veterans Court, has been remanded.

Although all three of Elkins' claims relate to the same accident, we note that the legal issues presented on appeal to the Veterans Court were all distinct (*i.e.,* whether Elkins has presented "new and material evidence" sufficient to reopen his 1953 claim for back injuries, whether he has presented a "well grounded" claim for headaches, and whether the medical reports furnished with his headache claim support a claim for neck injuries). Because Elkins' headache claim and neck ar-

gument do not appear to be intertwined with his back claim, it appears that our review of the Veterans Court's decision with respect to these two matters will not "disrupt the orderly process of adjudication" below with respect to the remanded claim. *Port of Boston Marine Terminal Ass'n,* 400 U.S. at 71, 91 S.Ct. 203; *see also Harris v. Derwinski,* 1 Vet.App. 180, 183 (1991) (refusing to exercise jurisdiction over veteran's claim for anxiety neurosis because that claim was "inextricably intertwined" with a heart disorder claim that remained undecided and pending below). Under the approach we have adopted in *Dewey,* we may treat Elkins' individual claims as separable on appeal.

■ Our methodology in *Dewey* for contract cases applies with even greater force to veterans cases. Because, as we noted above, each "particular claim for benefits" may be treated as distinct for jurisdictional purposes, *Maggitt,* 202 F.3d at 1376, a veteran's claims may be treated as separable on appeal. In those cases, such as the one at bar, where a veteran has packaged all his claims in a single appeal to the Veterans Court, it would be unfair to deny the veteran an immediate appeal of a final decision as to one or more of his claims simply because an additional claim is remanded for further proceedings. To require a final decision with respect to all claims raised at the Veterans Court may have the unintended and perverse effect of encouraging veterans to file separately their various claims for relief, in order to secure an immediate appeal to this court.

We acknowledge that allowing separate appeals of the various claims asserted by a veteran may lead to less efficient use of judicial resources. Such a result, however, is inevitable given the pro-claimant, nonadversarial, ex parte system that supplies veterans benefits. *See Maggitt,* 202 F.3d at 1377. Because veterans' claims are often prepared and litigated pro se, and because they are never finally decided but are always subject to re-opening, the court cannot fairly mandate that all claims for

relief be incorporated in a single document, as is required in a district court complaint.

Our conclusion, moreover, advances the goal of timely providing benefits to disabled veterans. In meritorious cases where the Veterans Court's interpretation of a statute or regulation would preclude an award of benefits on a particular claim, a veteran might otherwise have to wait years before all his or her claims are fully adjudicated and thus appealable to this court. Although the monetary amount that may ultimately be awarded will date back to the original effective date of the claim (normally the filing date of the claim), a veteran who depends on an award as a substitute for lost wages will be seriously harmed during the delay.

F. The dissent argues that 38 U.S.C. § 7292(b), which permits the Veterans Court to certify questions of law for interlocutory appeal to this court, forecloses other mechanisms for appealing decisions of the Veterans Court that do not render final decisions as to all claims pending before that court in a single appeal. 38 U.S.C. § 7292(b). Whether section 7292(b) provides the sole avenue for appealing a non-final decision of the Veterans Court is a question we need not decide today. We hold only that the Veterans Court's remand of Elkins' back claim does not negate the undeniable finality of its decisions regarding Elkins' neck argument and headache claim. Because we are only asked to exercise jurisdiction over a final decision on two matters, section 7292(b) does not apply. Section 7292(b) simply contains no implication for the separate appealability of simultaneously adjudicated claims where the Veterans Court decision is admittedly final as to the appealed claims. Nor, contrary to the dissent, does such an interpretation render section 7292(b) superfluous. Consider the case of a one-claim appeal that is remanded for factual development but contains a statutory interpretation that will likely determine the outcome. In such a case, section

7292(b) allows an appeal of the interpretation even though no final decision has been made on the claim.

We agree with the dissent that, had Elkins presented a single claim to the Veterans Court, and had that court remanded the claim for further proceedings, then the Veterans Court's decision would ordinarily not have been final and appealable. In this case, however, we hold that the Veterans Court's decision is unquestionably final with respect to Elkins' neck argument and headache claim, and that these matters are separable from Elkins' back claim for purposes of this appeal. We conclude that we may exercise jurisdiction over Elkins' neck argument and headache claim, notwithstanding the Veterans Court's remand of Elkins' back claim.

## II. Headache Condition

■ Contrary to the BVA's finding that Elkins had not presented sufficient evidence of a current headache disability, the Veterans Court held that there was indeed sufficient medical evidence that Elkins currently suffers from headaches. Nevertheless, the court then held that as to Elkins' headache condition, his claim was still not well grounded because there was no evidence of a medical nexus between the headaches and Elkins' military service.[2] Both parties now agree that this holding is contrary to our holding in *Hensley v. West*, 212 F.3d 1255, 1264 (Fed.Cir. 2000). In *Hensley*, which issued after the Veterans Court issued its decision, this court held that the Veterans Court may not review the BVA's determination of "not well grounded" and affirm the decision on alternative grounds (i.e., failure of another part of the three-part *Caluza* test) that involves finding facts in the first instance. *See id.; see also Caluza v. Brown*, 7 Vet.App. 498 (1995), *aff'd per curiam*, 78

F.3d 604 (Fed.Cir.1996). Thus, once it determined that the BVA had erred in finding that there was insufficient evidence of a current headache condition, "the proper course for the Court of Appeals for Veterans Claims would have been to remand the case to the BVA for further development and application of the correct law." *Id.* Otherwise the Veterans Court becomes a fact-finder, rather than a court of review. Fact-finding in veterans cases is to be done by the expert BVA, not by the Veterans Court. Accordingly, we remand Elkins' potential claim for a headache condition to the Veterans Court for remand to the BVA.

## III. Neck Injury

■ Elkins argues here, as before the Veterans Court, that the DVA's "duty to assist" the veteran under 38 U.S.C. § 5107(a) to "develop the facts pertinent to the claim" includes the duty to assist the veteran in articulating injuries that were not asserted as such by the veteran but are raised in the evidence. The evidence before the Board, Elkins asserts, included a medical report stating that Elkins was misinterpreting cervical or neck pain as headaches. Elkins argues that this evidence created an affirmative obligation on the part of the DVA and the Board to address the claim as including a neck or cervical injury. In support of his argument before the Veterans Court, Elkins pointed to the BVA's own decision quoting the examiner's statement that "what he was interpreting as headaches was actually cervical or neck pain."

Ignoring these arguments, however, the Veterans Court dismissed the nascent claim as to neck or cervical injury by concluding that it had no jurisdiction. Citing *Ledford*, the court reasoned that it had

---

**2.** For a claim to be well-grounded, there must be:

(1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in[-]service occurrence or aggravation of a disease or injury;

and (3) medical evidence of a nexus between an in-service [disease or injury] and the current disability.

*Epps v. Gober*, 126 F.3d 1464, 1468 (Fed.Cir. 1997).

jurisdiction only over *decisions* of the Board and because a neck or cervical injury was not articulated in the NOD, raised in the substantive appeal, or discussed in the Board decision, it was never decided and therefore outside the jurisdiction of the court.

A. Elkins argues that this court's decision in *Maggitt*, 202 F.3d at 1377, holding that the Veterans Court had "jurisdiction to hear *arguments* presented to it in the first instance, provided it otherwise has jurisdiction over the veteran's claim," *id.* (emphasis added), is controlling. In *Maggitt*, the veteran made a claim before the RO for asthma, a knee condition, a skin disorder, and a back injury. The RO and the Board denied the claim as to all four. Before the Veterans Court, Maggitt asserted the same four injuries but made two additional constitutional and administrative arguments in support of service connection for those same four alleged disabilities.

Elkins seems to assert that had the DVA properly assisted him, it would have considered the headache claim as including neck or cervical injury because such an injury was obvious from the medical records. Thus, Elkins appears to argue he did not present a new claim for neck or cervical injury but, like the veteran in *Maggitt*, was merely making a new argument, namely that a neck or cervical injury was apparent in the evidence of record before the BVA, although he articulated it as headaches.

B. The government responds that Elkins never filed a claim or NOD for neck pain (only citing back pain and headaches), and thus the BVA properly never mentioned it. In *Ledford*, 136 F.3d at 780, we explained that a narrow or specific NOD may limit the Veterans Court's jurisdiction to the specific elements of the benefits request that were denied in a decision below and contested in the NOD. We also explained that an NOD is necessary for the Veterans Court to have jurisdiction over a claim. *See id.* at 781 ("An NOD is required to initiate the appellate review

process."). The government argues that the Veterans Court's jurisdiction is limited to claims expressly raised by the veteran before the agency and decided by the BVA.

■ C. As we indicated in *Maggitt*, 202 F.3d at 1374, the manner in which the Veterans Court defines its statutory jurisdiction is a legal matter for our plenary review. Whether the Veterans Court had jurisdiction will depend on whether Elkins sought to make a new claim for neck injury before the Veterans Court or if he made only an additional argument in support of his existing headache claim raised in the NOD. If the former, *Ledford* controls and jurisdiction was properly found lacking. If the latter, *Maggitt* controls.

Our examination of Elkins' briefs before the Veterans Court points to the latter. In those briefs, Elkins cites the medical report conclusion that his headache pain was actually attributable to a neck injury and argues:

> The doctor acknowledges that the Appellant experiences pain which he "interprets" as headaches. *The Appellant's substantive appeal mentioned headaches.* [ ] It is disingenuous, at the very least, to argue that the Appellant is not competent to give an opinion as to the etiology of his condition, but then disallow his claim when he identifies the symptom that he is experiencing for the reason that he has failed to adequately diagnose it.

App. at 24 (emphasis added). Thus, Elkins appears to have argued to the Veterans Court that perhaps his headache claim is better characterized as a neck or cervical injury instead of by its apparent symptom of headaches. The DVA, Elkins argued before the Veterans Court, had a duty to assist him in properly developing his claim, rather than denying his claim because the injury was not properly described. We read this to be a new argument in support of Elkins' request for service connection for a disability that El-

kins referred to in the NOD as "headaches." Were the facts different we might agree with the government that Elkins made a new claim for the first time before the Veterans Court. For example, had Elkins argued before the Veterans Court that the evidence supported a finding of service connection for heart disease or a leg injury we would be hard pressed to view that as anything but a new claim, outside the jurisdiction of the Veterans Court. Here, however, the argument made by Elkins directly addressed the BVA's determination that he had not made a well grounded claim for headaches.

This case is thus more like *Maggitt*. Therefore, we reverse the Veterans Court's dismissal for lack of jurisdiction. The Veterans Court erred in dismissing Elkins' appeal because it was based on an argument that the BVA should have assisted him in properly developing the facts of his claim as focused on a new neck or cervical injury, rather than Elkins' headache condition. Despite dismissing what it called Elkins' neck injury claim, the court seems to have assimilated the argument into its finding that Elkins had indeed presented sufficient medical evidence that he currently suffered from an injury to satisfy the current disability element of the three-part *Caluza* test for well groundedness. *See Caluza*, 7 Vet.App. at 498. Thus, the Veterans Court appears to agree with Elkins that he indeed suffers a current injury. The question left unaddressed by the Veterans Court is whether the injury is properly denominated as headaches or a neck injury, or both, and whether nexus to a service event can be shown.

Because the parties agree that the headache condition is properly remanded to the Veterans Court for remand to the BVA, the failure of the Veterans Court to directly address the argument that Elkins' injury is better denominated as neck injury is moot. It is now established that Elkins suffers from some current injury or disability separate from his back injury. On

remand the BVA shall determine, based on the medical evidence presented, how that injury is best characterized. It shall also either determine that the claim is still not well grounded for lack of proof of nexus, or reach the merits after the DVA has assisted the veteran in developing the facts pertinent to the claim. This court of course neither makes any determination, nor intimates any view, as to either issue.

## CONCLUSION

The Veterans Court erred in affirming on alternative grounds the BVA's decision to deny Elkins' claim insofar as it referred to headaches, because the BVA, an expert administrative board, is the only proper tribunal to find the contested facts in veterans cases. It also erred in dismissing for lack of jurisdiction, thereby ignoring Elkins' argument that his headache condition might be more properly considered a neck injury, based on the evidence presented. Accordingly, we reverse the decision of the Veterans Court as to the dismissal and vacate as to the affirmance. We remand to that court for remand to the BVA, which shall adjudicate Elkins' claim, consistent with the Veterans Court's holding that evidence sufficient to make out the current disability element of a well grounded claim was presented. The decision of the Veterans Court is therefore

*REVERSED IN-PART, VACATED IN-PART* and *REMANDED.*

## COSTS

Each party to bear its own costs.

FRIEDMAN, Senior Circuit Judge, dissenting.

In my view, the decision of the Court of Appeals for Veterans Claims (Veterans Court) is not final, and this court has no jurisdiction to review it. I would therefore dismiss the appeal.

A. The Supreme Court consistently has held that a final decision is one that "ends the litigation on the merits and

leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945))). The Veterans Court decision in this case, which fully disposed of only two of the three issues before the court but vacated the decision of the Board of Veterans Appeals on the third issue and remanded to that entity for reconsideration, is a classic example of a decision that is non-final because it does not fully dispose of the entire case. *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *Rexford v. Brunswick–Balke–Collender Co.,* 228 U.S. 339, 345–46, 33 S.Ct. 515, 57 L.Ed. 864 (1913); *Cabot Corp. v. United States,* 788 F.2d 1539, 1542–44 (Fed.Cir.1986). *Cf.* Rule 54(b) of the Federal Rules of Civil Procedure, which recognizes that a district court decision that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not final.

The court so recognizes when it states that "[h]ad Elkins appealed a similar decision to us from a district court, there would be little question that we would lack jurisdiction." The court concludes that because the Department of Veterans Affairs (Department) administratively treats separate claims by a veteran as in effect separate cases, there is "a fundamental difference in the structure of a single 'case' between veterans litigation and district court proceedings" that warrants the application of different standards of finality in the two kinds of cases. The court concludes:

> we hold that the Veterans Court's decision is unquestionably final with respect to Elkins's neck argument and headache claim and that these matters are separable from Elkins's back claim for purposes of this appeal. We conclude that we may exercise jurisdiction over El-

kins's neck argument and headache claim, notwithstanding the Veterans Court's remand of Elkins's back claim.

The practice of the Department to treat administratively each of a veteran's claims as a separate "case" before it does not justify applying a different standard of finality in reviewing the decisions of the Veterans Court. The focus should be on how that court handles its cases, not on how the Department whose decisions it reviews does so. There is every reason to believe that that court treats a veteran's different claims as components of a single case, not as separate cases. The present case, although involving three claims by the veteran, has a single docket number and the court disposed of it in a single opinion. Although the court's decision was final with respect to two of the three claims in the case, that is not the standard governing whether the court's decision is final for purposes of appeal.

Reviewing the Veterans Court decision in this case could produce the very kind of piecemeal appeals that the final judgment rule is designed to protect against. *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940). If Elkins were to lose on the remand, and if the Veterans Court were to uphold that ruling, Elkins then could appeal that decision to this court, and we would be required to consider this case a second time. On the other hand, if we were to dismiss the appeal for want of a final decision, we could finally dispose of the entire case in a single appeal after the remand proceedings were completed. The court apparently recognizes this consequence of its decision when it "acknowledge[s] that allowing separate appeals of the various claims asserted by a veteran may lead to less efficient use of judicial resources."

B. The remaining question on the jurisdictional issue is whether our appellate jurisdiction over decisions of the Veterans Court is limited to those that are final.

Unlike the statutory provisions defining the general jurisdiction of the other cir-

cuits to review district court decisions (28 U.S.C. § 1291) and the provisions dealing with our jurisdiction over different kinds of cases (28 U.S.C. § 1295(a)(1), (2), (3), (6), (9), (10)), which refer to review of "final" decisions, orders or determinations, the provisions governing our review of Veterans Court decisions do not contain that explicit limitation. Section 7292(a) of Title 38 provides: "After a decision of the United States Court of Veterans Appeals is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of any statute or regulation ... or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." Although this provision does not expressly limit our review to "final" decisions of the Veterans Court, I view that limitation as implicit in the statutory scheme.

In view of the settled rule and practice that the jurisdiction of the courts of appeals is limited to reviewing "final decisions," it is most unlikely that if Congress had not intended that limitation to apply to our review of decisions of the Veterans Court, it would not clearly have so stated. There is nothing in the legislative history of the statute that indicates Congress so intended, and the absence of any reference to "final decisions" in § 7292 is not enough to effect such a significant change in the scope of judicial review.

Moreover, in § 7292, Congress has provided for review of interlocutory decisions of the Veterans Court in certain circumstances. Section 7292(b)(1) states that when a judge or panel of the Veterans Court "in making an order not otherwise appealable under this section, determines that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion ... and that the ultimate termination of the case may be materially advanced by the immediate consideration of that question," this court may permit an interlocutory appeal to be taken on that question upon a petition filed by "any party to the case."

This provision is virtually identical to provisions authorizing interlocutory appeals to the courts of appeals from district courts in 28 U.S.C. § 1292(b) and to this court from the Court of International Trade and the Court of Federal Claims in § 1292(d)(1), (2). In these three statutory provisions, the appellate court's general jurisdiction is explicitly limited to reviewing "final" decisions. The fact that Congress provided a similar provision to permit review of certain interlocutory decisions of the Veterans Court strongly suggests that it recognized and intended that our general jurisdiction to review decisions of that court also would be limited to review of "final" decisions. Indeed, if our jurisdiction is not so limited, there was no reason for that provision.

Finally, our jurisdiction to review Veterans Court decisions is limited in scope. We may review such decisions only "with respect to the validity of any statute or regulation ... or any interpretation thereof." 38 U.S.C. § 7292(a), (c). We cannot review that court's factual determinations or its application of statutes or regulations to the facts of a particular case. 38 U.S.C. § 7292(d)(2). In light of these express limitations, it is most unlikely that at the same time and sub silentio Congress intended to give us jurisdiction to review generally non-final decisions of that court.

The court may be ruling that because the statutes defining our jurisdiction do not explicitly provide for review of only final decisions, it has some flexibility in determining what decisions of the Veterans Court it will treat as final. There is such a suggestion in the court's statement, made in the second paragraph of its discussion of jurisdiction and after quoting § 7292(a), that "[t]his jurisdictional provision leaves open the question of whether the Veterans Court must render a 'final' decision disposing of all of the claims or issues presented to it before we may exercise appellate jurisdiction." If that is the

basis of the court's jurisdictional ruling, I cannot agree. That concept of flexible finality is, for the reasons I have given, inconsistent with the statutory provisions governing our review of Veterans Court decisions.

The court relies on *Grantham v. Brown,* 114 F.3d 1156 (Fed.Cir.1997) to support its jurisdictional ruling. There the veteran asserted two claims: a left-eye disability and a pension claim. The Veterans Court dismissed the eye claim for lack of jurisdiction because the veteran allegedly had not filed a valid notice of appeal regarding that claim. It vacated the Board of Veterans Appeals decision on the pension claim and remanded that issue to the Board for reconsideration and readjudication.

We reversed the denial of the eye claim, holding that the Veterans Court had jurisdiction to entertain it, and dismissed the appeal of the remand of the pension claim, holding that "typically" we have no "jurisdiction over Court of Veterans Appeals remands." *Id.* at 1159. The court did not discuss, or even refer to, the question whether in that circumstance it had jurisdiction to review the Veterans Court decision.

The fact that the court entertained the appeal even though the Veterans Court had decided only one of the two claims before it does not, in my view, make the case an appropriate precedent to support our jurisdiction here. When a court has not discussed or even referred to an issue, its decision cannot properly be treated as a ruling on the point. *Compare Moore v. Mead's Fine Bread Co.,* 348 U.S. 115, 118–120, 75 S.Ct. 148, 99 L.Ed. 145 (1954) (reinstating jury verdict for plaintiff in damage suit under § 3 of the Robinson–Patman Act, 15 U.S.C. § 13a), *with Nashville Milk Co. v. Carnation Co.,* 355 U.S. 373, 376, n. 5, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958) (stating, in holding that a private action would not lie for violation of that provision, "[t]he issue now before us was not decided in ... *Moore v. Mead's Fine Bread Co.,* 348 U.S. 115, 75 S.Ct. 148, 99

L.Ed. 145"). As in *United States v. More,* 7 U.S. (3 Cranch) 159, 172, 2 L.Ed. 397 (1805) (Marshall, C.J.), in *Grantham* apparently "[n]o question was made, in that [earlier] case, [*United States v. Simms,* 5 U.S. (1 Cranch) 252, 2 L.Ed. 98 (1803) ], as to the jurisdiction. It passed *sub silentio,* and the court does not consider itself bound by that case" (comment by Chief Justice Marshall during oral argument). In *More* the Court held that it did not have jurisdiction even though it previously had exercised jurisdiction in *Simms* in the same situation.

The court also relies upon decisions in which it has reviewed decisions of boards of contract appeals that decided some, but not all, of the claims before them, and upon decisions of the Veterans Court that reviewed decisions of the Department disposing of some, but not all, of a veteran's administrative claims. Such reference is misplaced, however, because "to assimilate the relation of these administrative bodies and the courts to the relationship between lower and upper courts is to disregard the origin and purposes of the movement for administrative regulation and at the same time to disregard the traditional scope, however far reaching, of the judicial process." *Federal Communications Comm'n v. Pottsville Broad. Co.,* 309 U.S. 134, 144, 60 S.Ct. 437, 84 L.Ed. 656 (1940). It also overlooks the "historical differences in the relationship between administrative bodies and reviewing courts and that between lower and upper courts." *Scripps–Howard Radio, Inc. v. Federal Communications Comm'n,* 316 U.S. 4, 10, 62 S.Ct. 875, 86 L.Ed. 1229 (1942). Judicial decisions that treat as final for review purposes administrative decisions that did not dispose of all the issues before the agency are not appropriate precedents for treating as final judicial decisions that decide only some of the issues before the court.