NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GEORGE D. PREWITT, JR.,**
*Claimant-Appellant,*

**v.**

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2013-7005

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-0792, Judge Alan G. Lance, Sr.

---

Decided:  March 18, 2013

---

GEORGE D. PREWITT, JR., of Greenville, Mississippi, pro se.

MELISSA M. DEVINE, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and JOSHUA P. MAYER, Attorney, United States Department of Veterans Affairs, of Washington, DC.

————————————

Before O'MALLEY, BRYSON, and REYNA, *Circuit Judges.*

BRYSON, *Circuit Judge.*

George D. Prewitt appeals from the judgment of the Court of Appeals for Veterans Claims ("CAVC"), which rejected certain of his claims for benefits and remanded others to the Board of Veterans' Appeals. Because the Board's decision on one of Mr. Prewitt's claims may have been based on improper treatment of Mr. Prewitt's lay evidence, we reverse and remand for further proceedings on that claim. We otherwise affirm.

I

Mr. Prewitt served on active duty in the United States Army from March 1968 to March 1970. While in combat, he suffered a gunshot wound to the neck. The Department of Veterans Affairs ("DVA") granted him a 30 percent disability rating for the residual effects of the gunshot wound, including an injury to muscle group I and a spinal accessory nerve, excision of a neuroma, limitation of motion of the left shoulder, and atrophy of the trapezius muscle. In November 1976 and again in January 1980, Mr. Prewitt requested increased compensation, but both times the DVA determined his disability had not become more severe. Then, in June of 1980, the DVA increased Mr. Prewitt's disability rating from the gunshot wound to 40 percent due to his demonstrated limitation of motion. In addition, the DVA granted a 10 percent rating for a service-related tender neck scar and injury to cranial nerve V. In September 2002, Mr. Prewitt again requested an increased rating for the gunshot wound. He underwent a DVA examination in February 2003, and the DVA

granted him a 20 percent rating for impairment of cranial nerve XI.

In February 2005, Mr. Prewitt received medical attention for atrial fibrillation. DVA physicians diagnosed him with hyperthyroidism and recommended treatment. Mr. Prewitt then requested that the DVA grant service connection for hyperthyroidism and atrial fibrillation secondary to hyperthyroidism. He also sought service connection for tinnitus, hypertension, and alleged injuries to cranial nerves II, III, and X; in addition, he claimed that he had "never received any compensation for injury to the fifth cranial nerve." Finally, Mr. Prewitt sought a total disability rating based on individual unemployability, but he asked that that claim be held in abeyance while he attempted to return to work.

Mr. Prewitt underwent a DVA medical examination in October 2005 that found "no evidence for injury to cranial nerves 2 and 3," and "no clinical evidence for injury" to cranial nerve X. The examining DVA physician also found that Mr. Prewitt's already diagnosed injuries to cranial nerves V and XI were "likely to be static since his neurological exam in 1980." Following another examination, the examining physician concluded that Mr. Prewitt's hyperthyroidism was not caused by the gunshot wound he sustained in service and that, although an abnormal result on a thyroid test administered in 2001 should have led to an earlier diagnosis of Mr. Prewitt's hyperthyroid condition, the delay in diagnosis did not result in any permanent disability.

The DVA then issued a decision in December 2005 denying service connection for tinnitus, atrial fibrillation, hyperthyroidism, injury to cranial nerves II, III, and X, and glomerulonephritis with arterial hypertension. Mr. Prewitt did not appear for a scheduled DVA medical examination in May 2007, claiming lack of transportation, but he stated in June of that year that the examination

was not necessary because it "would not be probative of whether there had been a clear and unmistakable error" in the DVA's 1970 evaluation. In March 2008 the DVA denied service connection for hypertension as well. Mr. Prewitt appealed those decisions to the Board.

On December 29, 2009, the Board upheld the denial of service connection for tinnitus, hyperthyroidism, atrial fibrillation, and injuries to cranial nerves II, III, and X. It remanded Mr. Prewitt's claim for service connection for hypertension to obtain a DVA medical opinion. In evaluating Mr. Prewitt's hyperthyroid condition for possible service connection, the Board found no evidence of, or reference to, that condition in Mr. Prewitt's service medical records. The Board also denied Mr. Prewitt's claims of CUE in the DVA's rating decisions regarding cranial nerves V and XI and in its 1970 finding of lack of service connection for cranial nerves II, III, and X.

Mr. Prewitt appealed the Board's decision to the CAVC. The court held that it lacked jurisdiction to entertain Mr. Prewitt's service connection claim for hypertension because the Board had remanded that claim to the regional office. In reciting the case's procedural history, the CAVC stated that in June 2006 Mr. Prewitt notified the DVA that he waived any appeal regarding his injury to cranial nerve V. Nevertheless, the court remanded Mr. Prewitt's claim "regarding any of [his] assignments of CUE"—including for cranial nerve V—because the record was uncertain as to whether the regional office had considered it in the first instance. As to Mr. Prewitt's hyperthyroidism and atrial fibrillation claims, the CAVC affirmed the finding of no service connection. The court noted that the only potential evidence supporting Mr. Prewitt's claim for service connection regarding hyperthyroidism was that one of his handwritten service records contained an illegible term. Although the court noted that the term might be "hyperthyroidism," it concluded that the term more likely referred to the neuroma that

had been surgically excised and the related hyperesthesia that he complained of at the time.

The CAVC also examined Mr. Prewitt's medical records and determined there was no evidence of any injury to cranial nerves II, III, and X. The court held that the Board had properly relied on the results of the medical evaluations in 1980 and 2005, which found no clinical evidence of injuries to those cranial nerves.[1] With respect to Mr. Prewitt's allegations that the DVA had failed to assist him in obtaining all of his service medical records, the court held that Mr. Prewitt had failed to raise that issue in a timely manner and that it was not reasonably raised by the record. Moreover, the court ruled, Mr. Prewitt had failed to point to any basis for believing the service records that had been produced were incomplete.

The court further held that the Board did not err by denying service connection for his tinnitus. It ruled that Mr. Prewitt was incompetent to provide lay testimony concerning the cause of his condition, and that, because he had failed to attend a DVA medical examination without good cause, the DVA was required to rest its decision on the existing evidence under 38 C.F.R. § 3.655(b).

Finally, the court held that the DVA did not commit CUE in denying service connection for hyperthyroidism. The court agreed with the Board's determination that Mr. Prewitt "suffered no permanent disability from VA's failure to diagnose his hyperthyroidism in 2001." Once the CAVC's decision became final, Mr. Prewitt appealed to this court.

---

[1]  Mr. Prewitt referred to those nerves as "muscle groups," but the CAVC correctly noted that his argument was directed to the cranial nerves.

## II

At the outset, we must determine whether the CAVC's ruling constitutes a final order over which we may exercise jurisdiction even though the CAVC remanded certain of Mr. Prewitt's claims to the Board.

This court may not review the CAVC's treatment of the CUE and hypertension issues, because the court's decisions as to those issues are not final. We have repeatedly made clear that "a decision by the Court of Appeals for Veterans Claims remanding to the Board is non-final and not reviewable" unless "the remand action itself would independently violate the rights of the veteran." *Joyce v. Nicholson*, 443 F.3d 845, 849 (Fed. Cir. 2006). The CAVC's remand order did not address Mr. Prewitt's CUE and hypertension claims, but simply permitted the Board and the regional office to engage in further development of those claims. The court's decision does not deprive Mr. Prewitt of any right or opportunity to have those claims reviewed if he is not satisfied with the later decisions of the regional office or the Board.[2]

Mr. Prewitt contends that the court erred by finding that he had waived his CUE claim regarding cranial nerve V. However, the CAVC made no such ruling; instead, it remanded his CUE claim for further development. Going forward, the court directed the Board to consider any additional argument or evidence submitted in connection with that claim.

The fact that the remand decisions are non-final, however, does not require us to dismiss Mr. Prewitt's appeal entirely. "This court has consistently recognized

---

[2] We also agree that any of Mr. Prewitt's claims that are directed to various muscle groups were not presented to the Board and therefore were not before the CAVC.

that the various claims of a veteran's overall 'case' may be treated as distinct for jurisdictional purposes." *Elkins v. Gober*, 229 F.3d 1369, 1374 (Fed. Cir. 2000). Because the issues Mr. Prewitt appeals are not so "intertwined" that deciding the claims before us would "disrupt the orderly process of adjudication," we are authorized to entertain his appeal from the court's decision as to those claims for which the court's ruling is final. *Id.* at 1376.

In addition, Mr. Prewitt has failed to dispute the CAVC's ruling regarding his rating for cranial nerves II, III, and X; we therefore affirm those rulings. He does challenge several of the CAVC's other holdings, however, and we now discuss each of those arguments.

## 1. TINNITUS

The Board and the CAVC held that Mr. Prewitt's lay testimony as to whether his tinnitus had an in-service cause was incompetent and that his tinnitus claim had to be denied because it was not supported by competent medical evidence on that issue.

Section 1154(a) of Title 38 requires the DVA to give "due consideration" to "all pertinent medical and lay evidence" when it evaluates a claim for disability benefits. In *Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009), we rejected the DVA's position that "competent medical evidence" is required whenever the issue involves "either medical etiology or a medical diagnosis." In that case, we held that a veteran's wife was competent to testify that her husband had committed suicide as a result of a mental disorder related to his military service. *Id.*; *see Buchanan v. Nicholson*, 451 F.3d 1331, 1336 n.1 (Fed. Cir. 2006) (vacating a CAVC decision because it "failed to consider whether the lay statements presented sufficient evidence of the etiology of [the veteran's] disability"); *see generally Jandreau v. Nicholson*, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

The government argues that the CAVC simply affirmed the Board's fact-specific determination that Mr. Prewitt's lay evidence was incompetent in this particular case. But the Board's ruling is not clear in that regard. The Board stated that, although Mr. Prewitt was "competent to establish the presence of the disability," he was not competent to testify as to causation, i.e., whether that condition had its origin in service. The Board concluded by stating that where, as in this case, "the determinative questions involve a nexus or causation, where a lay assertion on medical causation is not competent evidence, . . . competent medical evidence is required to substantiate the claim." The CAVC upheld the Board's ruling on this point, stating that Mr. Prewitt "did not have the specialized training necessary to provide an etiology opinion as to causation of his tinnitus."

The government acknowledges that the Board's discussion of this issue "perhaps lacks clarity," and it suggests that if this court should find the Board's "statements on this point so unclear as to permit an inference that the [B]oard categorically excluded the potential relevance of lay testimony" as to causation, the court "could remand the tinnitus claim for clarification and, if necessary, more specific findings as to the competence and sufficiency of Mr. Prewitt's lay opinion."

Upon consideration of the governing case law and the record in this case, we believe that a remand for those purposes is appropriate. To the extent that the Board concludes, as a factual matter, that Mr. Prewitt's lay testimony is not sufficient to satisfy his burden of showing service connection for his tinnitus, that is a factual determination that is not within our jurisdiction to review. But to the extent that the Board was applying, and the CAVC was upholding, a broader rule that lay evidence is incompetent and therefore inadmissible on the issue of in-service causation for a condition that manifests itself after

the veteran has left the service, that rule is inconsistent with section 1154 as we have construed it.

## 2. HYPERTHYROIDISM AND ATRIAL FIBRILLATION

Mr. Prewitt next argues that the CAVC erred in denying service connection for hyperthyroidism and atrial fibrillation because it misinterpreted the requirement of 38 U.S.C. § 5107(b) that the DVA give the veteran claimant the "benefit of the doubt." But the CAVC and the Board did not construe section 5107(b) at all. Mr. Prewitt's real complaint is that the CAVC did not apply that provision to his case. Section 5107(b), however, applies only "[w]hen there is an approximate balance of positive and negative evidence." In this case, the CAVC held that the facts weighed against a finding of service connection. It reasoned that the ambiguous word in Mr. Prewitt's service medical records was likely "hyperesthesia," not "hyperthyroidism," because the former term "makes much more sense" in context. The mere presence of an ambiguous term in a service record does not legally require the CAVC to apply section 5107(b).[3]

---

[3] In his reply brief, Mr. Prewitt alludes to the provision in 38 U.S.C. § 1154(b) requiring that "every reasonable doubt" regarding service connection be resolved in a combat veteran's favor. Mr. Prewitt failed to make that argument in his opening brief, however, and he has therefore waived it. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006). In any event, the "every reasonable doubt" rule in section 1154(b) applies to the question whether the combat veteran incurred an injury or disease during service, not to whether there is a nexus between the in-service event and a condition that manifested itself later. *Davidson*, 581 F.3d at 1315.

As for Mr. Prewitt's argument that the CAVC improperly discounted a medical article that he cited in support

Contrary to Mr. Prewitt's argument, the CAVC did not engage in improper de novo factfinding in making its ruling. It simply affirmed the Board's decision, on the same record, finding a lack of service connection for hyperthyroidism. Likewise, the court did not rely on its observation that Mr. Prewitt refused certain medicines and left a VA hospital against medical advice. The recitation of those facts served only as background to the CAVC's decision and therefore do not provide a basis for reversing the court's judgment.

### 3. FAILURE TO ASSIST

Mr. Prewitt claims that the Secretary failed in his duty to assist because the DVA issued several medical opinions regarding his disability even though Mr. Prewitt was not given a physical examination. The Secretary, however, is obligated to provide "a medical examination or . . . a medical opinion" only "when such an examination or opinion is necessary to make a decision on the claim." 38 U.S.C. § 5103A. Mr. Prewitt has pointed to no reason to conclude that the multiple DVA medical opinions he received were insufficient to resolve his claims, and we lack jurisdiction to review the Secretary's determination that a physical examination was not necessary to an accurate resolution of his case.

### 4. DUE PROCESS

Mr. Prewitt points to two alleged due process violations in the handling of his case. He first argues that the DVA altered or ignored portions of his service medical records that supported his disability claims and that the CAVC improperly engaged in de novo factfinding in determining that no files were missing from his records. But the CAVC simply held that Mr. Prewitt had failed to

---

of his service connection claim, we lack jurisdiction to review that fact-based ruling. 38 U.S.C. § 7292(d)(2).

provide a basis to conclude that some records were missing. It did not engage in de novo factfinding.

More importantly, the CAVC properly held that Mr. Prewitt had waived his service-records argument by not raising it before the Board. *See Maggitt v. West*, 202 F.3d 1370, 1378 (Fed. Cir. 2000) (holding that "the Veterans Court is uniquely positioned to balance and decide the considerations regarding exhaustion in a particular case"). Mr. Prewitt argues that the CAVC's finding of waiver is itself an instance of improper de novo factfinding, but that contention is plainly incorrect. The CAVC merely reviewed the arguments presented to the Board; the court did not add any factual determinations to the record. To the extent Mr. Prewitt complains that the Board never made factual findings about the completeness of his service records, the reason for the Board's failure to do so is that Mr. Prewitt did not raise that argument before the Board.

Mr. Prewitt's other due process contention is that the CAVC struck his timely filed reply brief and required him to refile his principal brief. The CAVC, however, "has broad discretion to interpret and apply its Rules of Practice and Procedure," *Bastien v. Shinseki*, 599 F.3d 1301, 1307 (Fed. Cir. 2010), and Mr. Prewitt has not provided any reason to believe that the CAVC abused that discretion in applying its rules in this case. Moreover, the record indicates that the CAVC ultimately permitted Mr. Prewitt to file his principal brief and reply brief, so it is unclear what prejudice he claims to have suffered as a result of the orders to which he objects. Accordingly, we reject his due process claims as groundless.

No costs.

**AFFIRMED in part, REVERSED in part, and REMANDED**