SCHOELEN, Judge,
with whom GREENBERG, Judge, joins, dissenting:
I join Part I of Judge Bartley’s dissenting opinion and agree that the evidence demonstrated that Mr. Evans was unde-batably unemployable. Although I agree with my colleagues that a decision denying referral for extraschedular TDIU can be challenged on the basis of clear and unmistakable error (CUE), I write separately because I believe that the most logical approach to this issue leads to a finding that establishing CUE in a referral decision results in a manifest change in the outcome. Thus, we need not create an exception to our prior decisions — Mr. Evans’s case rests comfortably within our CUE jurisprudence.
This case was sent en banc to address whether a regional office (RO) decision denying referral to the Director of Compensation Services (Director) for consideration of extraschedular individual unem-ployability can be challenged based on CUE. CUE is a high standard; nevertheless, the pro-claimant underpinnings of the veterans benefits system charge this Court with ensuring that veterans who have been denied benefits in error be given the right to have their claims reexamined. Hodge v. West, 155 F.3d 1356, 1364 (Fed.Cir.1998) (noting that the veterans benefits system is “so uniquely proclaimant [that] the importance of systemic fairness and the appearance of fairness carries great weight”); Bailey v. West, 160 F.3d 1360, 1370 (Fed.Cir.1998) (Michel, J. concurring) (recognizing that the system for awarding veterans benefits is “imbued with special beneficence” from a sovereign grateful to a “special class of citizens, those who risked harm to serve and defend their country”). For the following reasons, I see no basis for excluding extras-chedular total disability ratings based on individual unemployability (TDIU) from reexamination where VA committed CUE.
Any discussion of the scope of CUE must begin with 38 C.F.R. § 3.105. The regulation identifies determinations that can be the subject of a CUE motion including “decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, [and] line of duty.” Id. If the evidence establishes a clear’ and unmistakable error, § 3.105(a) directs that the decision be reversed or revised. In Russell v. Principi, 3 Vet.App. 310 (1992), the en banc Court examined the language of 38 C.F.R. § 3.105(a) (1991)[10] to determine whether the appellant had demonstrated CUE in a decision denying service connection. The Court noted that “[b]y its express terms, 38 C.F.R. § 3.105(a) refers to ‘determinations on which an action was predicated.’” 3 Vet.App. 310, 313 (1992). Analyzing this phrase, the unanimous Court concluded that “it necessarily follows that a ‘clear *195 and unmistakable error’ under § 3.105(a) must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made.” Id. The error cannot be harmless: it must be the basis for the decision. Id. Accordingly, the Court in Russell required that the appellant demonstrate that the alleged error directly undermined the RO’s basis for denial — a lack of service connection. Id. at 320.
In the years since Russell, this Court and the Federal Circuit have clarified what is necessary for an error to have manifestly changed the outcome of a prior final decision. In Mason v. Brown, 8 Vet.App. 44, 53 (1995), the Court concluded that, for an error in a prior RO decision denying service connection for a nervous condition to constitute CUE, correction of that error must result in a grant of service connection for that condition. In Cook v. Principi, the Federal Circuit identified two criteria for CUE: (1) “the alleged error must be outcome determinative” and (2) “the error must have been based upon the evidence of record at the time of the original decision.” 318 F.3d 1334, 1344 (Fed.Cir.2002). The court rejected the argument that a breach of the duty to assist could form the basis for a CUE claim because such an argument led only to the conclusion that the record was incomplete, not that the decision was incorrect. Id. at 1346. Cook reenforced Russell’s outcome determinative standard, requiring a showing that the adjudicator undebatably made an error at the heart of the decision.
In the present case, Mr. Evans established that he was undebatably unemployable. Therefore, I would hold that Mr. Evans was entitled to revision of the decision denying referral because he has demonstrated that the RO committed an outcome determinative error. Russell classifies an outcome determinative error as one forming the foundation of the decision. See Russell, 3 Vet.App. at 313. Section 4.16(b) provides that “it is the established policy of [VA] that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled.” Therefore, a determination on unemployability is at the heart of a decision whether to refer a claim to the Director. See 38 C.F.R. § 4.16(b) (1988); see also Thun v. Shinseki, 572 F.3d 1366, 1370 (Fed.Cir.2009) (determining that the plain language of the regulation indicates that “a finding of unemployability is a condition precedent to a referral by the regional office”). Mr. Evans showed that the evidence in 1988 undebatably established his unemployability, and thus the rating board erred in concluding that he was not entitled to referral for extraschedular consideration. In doing so, Mr. Evans has demonstrated an outcome-determinative error.
Any suggestion that holding that Mr. Evans has demonstrated an outcome-determinative error would resurrect the grave procedural error is unfounded. As noted in Cook, a grave procedural error leads to the conclusion that the record was incomplete and implicates evidence not in the record at the time of the decision. Cook, 318 F.3d at 1346. Mr. Evans does not contend that the RO violated its duties to provide him notice or develop his claim. The record is complete, and Mr. Evans asks the Court to find that the RO decision denying him extraschedular TDIU was incorrect. Holding that the RO erred in not referring Mr. Evans to the Director does not lead to a conclusion that the record was incomplete or implicate outside evidence. Thus, this case is distinct from the grave procedural error, and I would find Mr. Evans is entitled to revision on the basis of CUE in the 1988 RO decision denying him extraschedular TDIU.
*196 Moreover, the unique adjudicatory-scheme of extraschedular TDIU requiring referral to the Director should not be a barrier to a grant of CUE. Some may argue that referral cannot be the basis for CUE because additional adjudication is required to finally resolve the claim. Proponents of this approach may cling to the idea that once a decision becomes final, the door should only be opened if it can immediately be closed again. They fear that anything else opens the floodgates to repetitive and belated readjudication of veterans benefits claims. These concerns are unfounded. Of course, finality is important, and repetitive readjudication should be avoided. Nevertheless, the additional adjudication that would follow a revision of a decision on referral — like the additional adjudication following decisions on veteran status, marriage, service connection, and dependency — is not redundant. Rather, consistent with the structure of the VA system where “even the different elements of a single claim might necessarily be litigated separately,” if revision is granted on the basis of CUE, the downstream issues from that decision will be litigated for the first time. Elkins v. Gober, 229 F.3d 1369, 1375 (Fed.Cir.2000) (recognizing that “the unique statutory process of adjudication through which veterans seek benefits may necessarily require that the different issues or claims of a case be resolved at different times, both by the agency of original jurisdiction and on appeal”).[11]
It is axiomatic that an appellant can demonstrate CUE by showing that but for the error, he would have been awarded service connection. See Russell, Mason, and Cook, all supra. Revising a decision to award service connection does not end the appellant’s claim. Instead, the decision denying service connection is reversed and the matter is remanded for further adjudication of disability rating and effective date. Similarly, because veteran status and marriage can be dispositive in disability compensation and death and indemnity compensation claims, VA may deny the claim before any meaningful evi-dentiary development takes place. If a claimant later challenges a denial of disability compensation on the basis of veteran status, the sparse and undeveloped record may only be sufficient to establish that he or she was a veteran, leaving downstream issues of service connection, disability rating, and effective date for subsequent proceedings. A widow may be in a similar position if she is denied death and indemnity compensation based on an erroneous determination on marriage. To establish CUE, should she be required to show not only that she was married to the deceased veteran but also that he died of a service-connected illness? It would be absurd to cut these blameless claimants off at their knees in the name of protecting finality. Because both the structure of the veterans benefits system and the Court’s consistent practice allow for downstream adjudication of previously unaddressed issues, any argument that referral cannot be the basis for CUE because it requires additional adjudication must fail.
Demonstrating an outcome-determinative error in the rating board’s decision denying referral does not require an exception; it fits squarely within the rule. Accordingly, because I would find that Mr. *197 Evans established CUE in the 1988 rating decision, I respectfully dissent.

. In 1991, § 3.105(a) provided:
(a) Error. Previous determinations on which an action was predicated, including decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, line of duty, and other issues, will be accepted as correct in the absence of clear and unmistakable error ____
In December 1991, VA changed the first sentence of § 3.105(a) to remove the language "determinations on which an action was predicated” and replacing it with "determinations that are final and binding.” See 56 FR 65,845-6 (Dec. 19, 1991). However, in Bus-tos v. West, 179 F.3d 1378 (Fed.Cir.1999), the U.S, Court of Appeals for the Federal Circuit (Federal Circuit) reaffirmed Russell's interpretation of § 3.105(a) based on the amended regulation.

. In King v. Shinseki, the Court stated that "a manifest change in the outcome of the adjudication means that, absent the alleged clear and unmistakable error, the benefit sought would have been granted at the outset.” 26 Vet.App. 433, 442 (2014). To the extent this statement could be construed to equate manifest change in the outcome with actual payment, such an interpretation would run afoul of Elkins, which contemplates separate, later adjudications of downstream elements.