# United States Court of Appeals for the Federal Circuit

---

**LARRY G. TYRUES,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7007

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 04-584.

---

Decided: October 10, 2013

---

MARK R. LIPPMAN, The Veterans Law Group, of La Jolla, California, argued for claimant-appellant.

MARTIN F. HOCKEY, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and MARTIE ADELMAN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

---

Before NEWMAN, LOURIE, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* TARANTO.
Dissenting opinion filed by *Circuit Judge* NEWMAN.

TARANTO, *Circuit Judge.*

Larry G. Tyrues, a veteran of the United States Army who served in the Persian Gulf, sought disability benefits under two different standards. In September 1998, the Board of Veterans' Appeals rejected his claim to benefits under 38 U.S.C. § 1110, because his lung condition lacked the required service connection, but remanded to the Department of Veterans' Affairs Regional Office for further consideration of whether his chronic symptoms manifested Persian Gulf Syndrome, which might have entitled him to benefits under standards then in regulations but soon enacted as 38 U.S.C. § 1117. Mr. Tyrues did not appeal to the Court of Appeals for Veterans Claims from the Board's September 1998 decision until more than 5 years later.

In April 2004, after the remand, the Board decided that Mr. Tyrues was not entitled to benefits pursuant to section 1117. At that point, Mr. Tyrues asked the Veterans Court to review both the April 2004 denial under section 1117 and the September 1998 denial under section 1110. The Veterans Court dismissed the part of his appeal that challenged the September 1998 Board decision, ruling that Mr. Tyrues (a) missed the 120-day deadline for appealing that decision, 38 U.S.C. § 7266(a), and (b) presented no basis for equitable tolling under *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011). Concluding that the Veterans Court correctly interpreted 38 U.S.C. § 7266(a), we now affirm, as we did when the Veterans Court earlier reached the same untimeliness decision, before *Henderson*, without considering equitable tolling.

*See Tyrues v. Shinseki*, 631 F.3d 1380 (Fed. Cir.), *vacated and remanded in light of* Henderson, 132 S. Ct. 75 (2011).

BACKGROUND

Mr. Tyrues served his country in the United States Army in the Persian Gulf from November 1990 to May 1991. In March 1995, shortly after being hospitalized for pneumonia, Mr. Tyrues sought benefits for a lung disability pursuant to 38 U.S.C. § 1110, which provides for payment of compensation based on disabilities that result from a personal injury suffered or disease contracted in the line of duty. A veteran entitled to receive benefits under section 1110 is said to have a disability with a direct service connection.

While his entitlement to disability benefits under section 1110 was pending, Mr. Tyrues appeared at a hearing before a Board member to discuss the condition of his lungs. During the hearing, Mr. Tyrues said that other soldiers who had served in the Persian Gulf were experiencing chronic medical symptoms similar to his. The Board member responded that "[t]hat's not really relevant" under section 1110 but that Mr. Tyrues should "certainly file a claim" seeking benefits for Persian Gulf Syndrome under standards, then embodied in regulations but about to be codified in section 1117, that afford a presumption of service connection in certain circumstances. Six days later, Mr. Tyrues amended his claim for disability benefits to identify chronic symptoms associated with Persian Gulf Syndrome, including aching joints, memory loss, and a stomach condition.

In September 1998, the Board denied Mr. Tyrues disability compensation under section 1110. The entirety of the "Order" section of the decision stated: "The claim for entitlement to service connection for a lung disorder on a direct basis is denied." In the distinct "Remand" portion of its decision, the Board sent Mr. Tyrues's case back to the Regional Office for additional development of evidence

on whether Mr. Tyrues's "chronic disorder manifested by shortness of breath, due to undiagnosed illness," was entitled to a presumptive service connection as Persian Gulf Syndrome.

The Board decision informed Mr. Tyrues of his appellate rights:

> NOTICE OF APPELLATE RIGHTS: Under 38 U.S.C.A. § 7266 . . . , a decision of the Board of Veterans' Appeals granting less than the complete benefit, or benefits, sought on appeal is appealable to the United States Court of Veterans Appeals within 120 days from the date of mailing of notice of the decision . . . . Appellate rights do not attach to those issues addressed in the remand portion of the Board's decision, because a remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal.

The Board also attached a separate notice of appellate rights, which told Mr. Tyrues:

> The attached decision by the Board . . . is the final decision for all issues addressed in the "Order" section of the decision. The Board may also choose to remand an issue or issues to the local VA office for additional development. If the Board did this in your case, then a "Remand" section follows the "Order." However, you cannot appeal an issue remanded to the local VA office because a remand is not a final decision. *The advice below on how to appeal a claim applies only to issues that were allowed, denied, or dismissed in the "Order."*

(Emphasis in original.) The notice informed Mr. Tyrues of how to appeal and said:

> You have 120 days from the date this decision was mailed to you . . . to file a Notice of Appeal with the United States Court of Appeals for Veterans Claims.

Mr. Tyrues did not file an appeal within 120 days.

In April 2004, the Board decided that Mr. Tyrues was not entitled to section 1117's presumption of service connection for Persian Gulf veterans. Mr. Tyrues then sought review in the Veterans Court of both the April 2004 denial of benefits under section 1117 and the September 1998 denial of benefits under section 1110.

In November 2005, the Veterans Court affirmed the April 2004 decision but held that it lacked jurisdiction to review the Board's September 1998 decision because, as to that decision, Mr. Tyrues failed to comply with the mandate of 38 U.S.C. § 7266(a) that a veteran "shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed." *Tyrues v. Nicholson*, 20 Vet. App. 231 (2005). After this court remanded for reconsideration on the Secretary's motion, *Tyrues v. Peake*, 273 F. App'x 921 (Fed. Cir. 2008), the Veterans Court, acting en banc, again dismissed Mr. Tyrues's appeal of the Board's September 1998 decision for lack of jurisdiction. *Tyrues v. Shinseki*, 23 Vet. App. 166 (2009). This court then affirmed the Veterans Court. *Tyrues v. Shinseki*, 631 F.3d 1380 (Fed. Cir. 2011).

A few weeks later, the Supreme Court held in *Henderson v. Shinseki* that the 120-day filing deadline in section 7266(a), though "an important procedural rule," "does not have jurisdictional attributes." 131 S. Ct. 1197, 1206 (2011). The Supreme Court then granted Mr. Tyrues's petition for certiorari, vacated this court's judgment, and remanded for further consideration in light of *Henderson. Tyrues v. Shinseki*, 132 S. Ct. 75 (2011). This court in turn vacated the Veterans Court's judgment and remanded for consideration of whether the non-

jurisdictional nature of section 7266(a) should lead to a different result. *Tyrues v. Shinseki*, 467 F. App'x 889, 890 (Fed. Cir. 2012). The Veterans Court thereafter held that it still must dismiss the appeal from the September 1998 decision, because Mr. Tyrues advanced no basis for equitable tolling of the 120-day clock in his case. *Tyrues v. Shinseki*, 26 Vet. App. 31, 33-34 (2012).

Mr. Tyrues timely petitioned this court for review of the Veterans Court's decision under 38 U.S.C. § 7292(a).

## DISCUSSION

This court's jurisdiction to review decisions of the Veterans Court is limited. *See* 38 U.S.C. § 7292. We have jurisdiction to decide appeals insofar as they challenge the validity of a decision of the Veterans Court with respect to a rule of law, including the interpretation or validity of any statute or regulation. *Id.* § 7292(a), (d)(1). We do not have jurisdiction to review a challenge to a factual determination or a challenge to a law or regulation as applied to the facts of a particular case where, as here, the challenge presents no constitutional issue. *Id.* § 7292(d)(2).

Mr. Tyrues's appeal presents two related issues of statutory interpretation: When the Board has clearly rejected a request for benefits under one statutory standard and designated that rejection as subject to immediate appeal, while separately remanding the matter for consideration of the claimant's request for benefits on other statutory grounds, (1) can the denial be appealed immediately, *i.e.*, without waiting for completion of the remand, and (2) must the denial be appealed immediately, *i.e.*, within the 120 days specified in section 7266(a), in the absence of equitable tolling? In our earlier decision, now vacated, we addressed and answered affirmatively the same questions, though without the equitable-tolling qualifier: "whether the non-remanded portion of a mixed decision from the Board is final for the purposes of

§ 7266(a) and must be appealed within 120 days from the date of judgment." 631 F.3d at 1383. We see no basis for now reaching a different conclusion, subject only to the addition of the *Henderson*-based equitable-tolling qualifier. With no issue before us on the case-specific matter of inapplicability of equitable tolling to Mr. Tyrues, we therefore affirm.

## A

Neither party disputes that a veteran can immediately appeal a mixed Board decision—a decision that definitively denies benefits on one statutory ground while remanding for consideration of entitlement to benefits on another ground. The statute supports that position.

Section 7266(a) provides for "review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals." A decision of the Board is an order that either grants or denies benefits sought by the veteran. *See id.* § 7104(d) (requiring that each "decision" of the Board either "grant[] appropriate relief or deny[] relief"); *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000) ("A 'decision' of the Board . . . is the decision with respect to the benefit sought by the veteran: those benefits are either granted . . . or they are denied."). And this court and the Veterans Court, considering the policies specific to this statutory context, have long held that a decision definitively denying certain benefits—here, it is undisputed that the Board definitively denied benefits under section 1110—is a "final" decision under section 7266(a), despite the simultaneous remand of issues concerning receipt of benefits on other statutory grounds, where immediate "judicial review will not disrupt the orderly process of adjudication." *See Elkins v. Gober*, 229 F.3d 1369, 1373 (Fed. Cir. 2000).

Consequently, the denial portion of a mixed decision is a final decision available for Veterans Court review where the Board makes clear the finality of that denial,

although the Veterans Court is able to dismiss the appeal on the ground that immediate review would disrupt orderly adjudication, as where the denial portion is "inextricably intertwined" with the portion ordering a remand. *Harris v. Derwinski*, 1 Vet. App. 180, 183 (1991) (refusing to exercise jurisdiction over an appeal that was "inextricably intertwined" with an issue undecided and pending before the Regional Office).

This rule not only fits the statutory language and context but enables the Board's own rulings to provide the clarity that is desirable in a busy adjudicatory system. And it finds support in the longstanding treatment of certain partial-case resolutions in the federal courts—not because that treatment directly controls, but because it supplies an instructive model for interpreting the provisions governing the analogous situation here. Under Fed. R. Civ. P. 54(b), a district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties," upon "determin[ing] that there is no just reason for delay." Such an adjudication of some (but not all) claims is an appealable "final judgment" under 28 U.S.C. §§ 1291, 1295. *See, e.g.*, *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956); *Spraytex, Inc. v. DJS&T*, 96 F.3d 1377 (Fed. Cir. 1996).

Like a district court acting under Rule 54(b), the Board in the present context can determine that a denial portion of its ruling is definitive and sufficiently separate from a remand portion that it should be designated as final and thus immediately appealable—as the Veterans Court found the Board did with unchallenged clarity in this case. *Tyrues*, 23 Vet. App. at 180-81. And like a district court's decision to enter a partial final judgment under Rule 54(b), the Board's clear designation of a denial as final is not conclusive on the reviewing tribunal. Whether on the claimant's motion under the Veterans Court's Rule 5(a)(3) or otherwise, the Veterans Court may decline to review the decision based on prudential or

similar considerations, such as sufficient intertwining of the decided and remanded issues, *see Harris v. Derwinski*, *supra*, as a federal appeals court may disagree with a district court's determination that there is no just reason for delay in entering an appealable judgment on some (but not all) claims. *See*, *e.g.*, 10 Charles A. Wright, et al., Federal Practice and Procedure § 2655 at 39-40 (3d ed. 1998) ("The fact that the district court files a Rule 54(b) certificate stating that those requirements have been satisfied is not conclusive [and] is fully reviewable by an appellate court."); *id.* § 2659 at 112 & n.18; *Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.*, 505 F.3d 226, 230 (2d Cir. 2007); *Gold Seal Co. v. Weeks*, 209 F.2d 802, 810-11 (D.C. Cir. 1954).

This interpretation of section 7266(a) favors the veteran in at least two ways. First, it enables the veteran simply to follow express and unequivocal appealability directives from the Board, whose obligation in this setting, as elsewhere in the Title 38 scheme, is to do all it can to provide clear guidance as to what it expects of the veteran. Uncertainty as to finality can both encourage premature attempts to appeal the unappealable and cause the failure to appeal the appealable. Predicating appealability on the Board's unambiguous instructions provides clarity. The Veterans Court thus did not rely on an incorrect rule of law in founding jurisdiction on a clear Board appealability statement, without resolving a dispute about whether Mr. Tyrues had one or more than one "claim"—a term that is in Rule 54(b) but not in section 7266(a). *Tyrues*, 23 Vet. App. at 172. Second, allowing the immediate appeal, subject to Veterans Court determinations of reasons not to proceed, makes possible quick correction of erroneous denials, *see Elkins*, 229 F.3d at 1375, while permitting oversight for systemic efficiency, as this court explained in its earlier, now-vacated decision in this case. *Tyrues*, 631 F.3d at 1384.

B

When the Board renders a clear definitive denial of benefits as part of a mixed decision, we further conclude, the veteran not only can appeal immediately, but must bring any appeal from the denial portion within the 120-day period allowed by statute. Such a denial is a "final decision," as explained above, not an interlocutory decision. And section 7266(a) declares that, "[i]n order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision *shall file* a notice of appeal with the Court *within 120 days* after the date on which notice of the decision is mailed." 38 U.S.C. § 7266(a) (emphasis added). The plain meaning of that language, moreover, fits with the analogous law governing a Rule 54(b) partial final judgment, which must be appealed within the time allowed for appealing any "final judgment" and cannot await completion of the rest of the litigation. *See, e.g.*, *Brown v. Eli Lilly and Co.*, 654 F.3d 347, 354 (2d Cir. 2011) (dismissing for failure to timely appeal after entry of a Rule 54(b) judgment); *In re Lindsay*, 59 F.3d 942, 951 (9th Cir. 1995) ("A Rule 54(b) judgment does not give the prospective appellant an election to appeal at that time or later, when the entire case is over.").[1] As noted above, the appellate tribunal

[1]  *See also Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 516 (1950) ("We hold the decree . . . to have been a final one as to Petroleum and one from which it could have appealed and that its failure to appeal therefrom forfeits its right of review."); *Hill v. Chicago & E. R. Co.*, 140 U.S. 52, 55 (1891) (refusing to consider, on appeal of a later judgment in the same suit, a party's concurrent challenge to a **prior** judgment, which was not timely appealed, but was "appealable as to the matters which it fully determined"); Richard J. Pierce, Jr., Administrative

may decide not to proceed with the appeal (on request or *sua sponte*), but the appeal must be filed.

Contrary to Mr. Tyrues's contention, the Supreme Court's decision in *Henderson* does not support a radically different rule under section 7266(a), namely, that a veteran has the discretion to file an appeal immediately or to wait until completion of all remand proceedings. The Supreme Court in *Henderson* relied in substantial part on Title 38's solicitude for veterans, 131 S. Ct. at 1205-06, but the Court invoked that policy for a limited purpose. It held only that violations of section 7266(a)'s timing requirement might be excused for good reasons, not that the rule could be disregarded at the veteran's discretion in the significant class of cases involving mixed decisions. The Veterans Court recognizes the availability of case-specific equitable tolling to excuse such violations, and this court has not understood *Henderson* to require more. Indeed, Mr. Tyrues's position that veterans have plenary discretion not to appeal (within 120 days) in all mixed Board decisions would be contrary to the Supreme Court's understanding of section 7266(a)'s timing requirement as an "important procedural rule." 131 S. Ct. at 1206.

Mr. Tyrues's position also cannot be soundly supported by this court's decision in *Brownlee v. DynCorp.*, 349 F.3d 1343 (Fed. Cir. 2003), which this court distinguished in its now-vacated 2011 ruling in this case, *Tyrues*, 631 F.3d at 1384-85. *Brownlee* held that, when the Armed Services Board of Contract Appeals has determined that the claimant is entitled to relief, an appeal of that determination could either be brought immediately to this

---

Law Treatise § 11.7 (5th ed. 2010) (warning that, when seeking judicial review of agency action, "if a party waits until the agency has taken a subsequent action, a court might dismiss the petition as untimely if it concludes that the action was reviewable at an earlier time.").

court or await completion of the determination of monetary relief on that very claim. Thus, *Brownlee* did not involve the scenario involved here (or under Rule 54(b)); *i.e.*, it did not involve a completed adjudication of a particular claim for relief, but separation of liability and quantification determinations. And there are meaningful differences in statutory language and context.

The section of the Contract Disputes Act relevant in *Brownlee* uses permissive language in stating that a Board of Contract Appeals decision is final except that "a contractor *may appeal* the decision to the United States Court of Appeals for the Federal Circuit within 120 days." 41 U.S.C. § 7107(a) (emphasis added). And the jurisdictional provision of this court that was relevant in *Brownlee*, 28 U.S.C. § 1295(a)(10), does not address the consequences of a failure to appeal from a final Board of Contract Appeals decision. *Brownlee* thus involved no statutory command as stark as section 7266(a)'s rule that, "[i]n order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' appeals, a person adversely affected by such a decision shall file a notice of appeal with the Court within 120 days."

The Contract Disputes Act context is also quite different from the present context. There are roughly two hundred times more appeals from the Board of Veterans' Appeals each year than there are from the Board of Contract Appeals. *Compare* United States Court of Appeals for the Federal Circuit, Appeals Filed, Terminated, and Pending (2012), *available at* www.cafc.uscourts. gov/the-court/statistics.html (reporting 17 appeals filed from the Board of Contract Appeals during the twelve-month period ending September 30, 2012) *with* United States Court of Appeals for Veterans Claims, Annual Report (2012), *available at* www.uscourts.cavc.gov/report. php (reporting 3,649 appeals from the Board of Veterans' Appeals during same period). The policies relevant to

handling a trickle of appeals that involve commercial entities do not readily carry over to a large-scale system of adjudication that involves individual claimants and affirmatively seeks to provide benefits authorized by law as quickly as possible. *Brownlee* thus does not justify a result different from the result otherwise warranted in this case: final decisions that are part of mixed decisions must be appealed within the 120-day period specified in section 7266(a), subject to equitable tolling.

CONCLUSION

Because the Veterans Court correctly interpreted section 7266(a), and because it found no basis for equitable tolling of that provision's 120-day rule in this case, we affirm the Veterans Court's dismissal of the April 2004 appeal of the September 1998 Board decision.

No costs.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**LARRY G. TYRUES,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7007

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 04-584.

---

NEWMAN, *Circuit Judge*, dissenting.

This case presents a far-reaching ruling of procedural law specific to veterans' cases, where a vast agency administers the nation's laws affecting the population of war veterans.

No aspect of this case offers the "unchallenged clarity" seen by my colleagues. The very nature of Veteran Tyrues' "claim," which has been pending since 1995, is the subject of three Veterans Court decisions, two Federal Circuit decisions, and a "grant of certiorari, vacate, and remand" (GVR) from the Supreme Court.

This court today holds that a veteran who is proceeding before a Regional Office and Board of Veterans Appeals (BVA) *must* take an immediate interlocutory appeal

to the Veterans Court whenever the BVA decides part of a claim, even if the BVA remands to the Regional Office on a related aspect of the same claim. This court today holds that unless such partial appeal is taken, the veteran forfeits the right and opportunity to appeal that partially decided aspect or raise that argument after the BVA's final judgment. This is incorrect procedural law in any context, and is particularly inapt as applied to veterans' claim procedure. I respectfully dissent.

### *Veteran Tyrues' pulmonary claim*

The procedural facts of this case are as follows: Mr. Tyrues suffers from chronic respiratory symptoms including shortness of breath and severe persistent lung infection. In 1995 he filed a claim for service connected pulmonary disability based on his exposure to dust, fumes, kerosene and other irritants during his service in the Persian Gulf War. The BVA held in 1998 that he had not proven the medical facts of direct service connection under 38 U.S.C. §1110, and remanded to the Regional Office for determination of whether he met the criteria of 38 U.S.C. §1117 *et seq.*, which provide a statutory presumption of service connection for Persian Gulf War veterans for "undiagnosed" or "unexplained" disabilities, including "symptoms involving the upper or lower respiratory system." In accordance with this presumption, signs and symptoms of respiratory illness "shall be considered to have been incurred in or aggravated by service . . . , notwithstanding that there is no record of evidence of such illness during the period of such service." 38 U.S.C. §1118(a).

In a Board decision dated September 29, 1998, the BVA described the "issue" of Mr. Tyrues' claim as follows:

> ISSUE: Entitlement to service connection for a lung disorder, including service connection for chronic disorder manifested by shortness of

> breath due to an undiagnosed illness, claimed as secondary to Persian Gulf War service.

*1998 Bd. op.* at 1. The BVA's decision separated the issue into two components: entitlement to service-connected lung disorder on a direct basis under §1110, and entitlement to service-connected respiratory symptoms on a presumptive basis under §1117. The Board rejected the §1110 basis, finding "no competent evidence that the veteran currently suffers from a lung disorder," but remanded to the Regional Office under §1117, stating that:

> As the record stands, it is unclear whether there is medical evidence to support the veteran's claimed respiratory symptoms or whether any of the symptoms are affiliated with a diagnosed illness.

*Id.* at 8–9. The Board recommended that Mr. Tyrues undergo additional respiratory examinations on remand.

Remand proceeded in the VA Regional Office in Montgomery, Alabama. From December 1998 to October 2002 Mr. Tyrues underwent three medical examinations, all focused on his respiratory symptoms as required by the Board. The VA examiners came to three different conclusions: (1) Tyrues "probably has chronic bronchitis, which gets worse when he gets exposed to dust, paint, etc."; (2) Tyrues suffers from "mild chronic bronchitis with a history of refractory pneumonia [and] shortness of breath due to an undiagnosed illness"; and (3) Tyrues "is allergic to certain paints and vapor and these occasional respiratory symptoms are not related to the exposure of fumes in Gulf War." *Tyrues v. Shinseki*, 23 Vet. App. 166, 169–70 (2009).

In 2004 the BVA denied service connection of respiratory symptoms under §1117. The Board acknowledged that Persian Gulf War veterans receive presumptive

service connection for certain "unexplained" or "undiagnosed" chronic disabilities manifesting within the presumptive period, but concluded that Mr. Tyrues' respiratory problems were not "unexplained." The Board stated that his symptoms were attributable to "known clinical problems" over the years, including pneumonia, pharyngitis, tonsillitis, bronchitis, and a reaction to inhaling environmental agents, *i.e.* various etiologically known lung disorders. *2004 Bd. op.* at 11. The Board did not reconcile its 2004 and 1998 determinations.

Mr. Tyrues appealed to the Court of Appeals for Veterans Claims, arguing that he met the preponderance of evidence standard for direct service connection of a lung disorder under §1110, and alternatively that his evidence established entitlement to the statutory presumption of service connection under §1117. He also argued that the BVA should not have "separat[ed] his claim for direct service connection for a respiratory disability from his claim for presumptive service connection for a lung disability due to an undiagnosed illness." *Tyrues v. Nicholson*, 20 Vet. App. 231, 2005 WL 3157695, at \*2 (2005).

The Veterans Court affirmed the BVA's ruling under §1117, and dismissed his theory of direct service connection under §1110 because he did not take an interlocutory appeal of that aspect of the BVA's 1998 decision within 120 days, citing 38 U.S.C. §7266(a). The Veterans' Court held that the 120-day appeal period had run in 1998 as to that theory, and that his appeal as to direct service connection was jurisdictionally barred. *Id.*, at \*3.

Mr. Tyrues appealed to this court, and we remanded, *Tyrues v. Peake*, 273 F. App'x 921, 922 (Fed. Cir. 2008) ("*Tyrues I*"), based on the government's stipulation that it would be appropriate to remand in light of the Veterans Court's holding in *Roebuck v. Nicholson*, 20 Vet. App. 307 (2006). *Roebuck* held that when there are two theories of entitlement on a single disability claim, *i.e.,* a direct

theory and a presumptive theory, the 120-day appeal period of §7266 "will not begin to run until the Board has denied all theories in support of the claim that it has identified for consideration."  20 Vet. App. at 316.

The full seven-judge Veterans Court heard Mr. Tyrues' case on remand for consideration in light of *Roebuck*, issuing four opinions.  *Tyrues v. Shinseki*, 23 Vet. App. 166 (2009).  The plurality opinion concluded that finality attached to the 1998 BVA decision on the §1110 direct service connection aspect because *Roebuck* was either wrong or inapplicable.  *Id.* at 172–76.  The other three opinions criticized the plurality's failure to provide clear guidance, and expressed divergent views, from the view that Mr. Tyrues asserted two "separate and distinct claims," to the view that Mr. Tyrues asserted one claim with two theories of service connection.  *Id.* at 185–199.  The majority affirmed dismissal of the appeal of the §1110 aspect of Mr. Tyrues' claim.

Mr. Tyrues again appealed to this court, and we affirmed on the ground that under the "rigid jurisdictional nature of § 7266," public policy is best served by allowing appeals once the Board makes part of a claim final.  *Tyrues v. Shinseki*, 631 F.3d 1380, 1383 (Fed. Cir. 2011) ("*Tyrues II*").  This court did not explain why a policy interest in *allowing* interlocutory appeal in partial decision cases resulted in a rule *requiring* interlocutory appeal; however, it was clear that we viewed §7266(a) as jurisdictional.  *Id.* at 1384.

Shortly after our decision in *Tyrues II*, the Supreme Court ruled that §7266(a) is not jurisdictional.  *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011).  The Court stated that §7266(a) is a "claim processing rule" enacted to assist with the "orderly progress of litigation" in veterans cases, and should not be construed to produce harsh and unfair consequences to veterans.  *Id.* at 1203–04.  The Court identified the availability of equitable tolling as one of the

distinctions between a claim processing rule and a jurisdictional rule. *Id.* at 1205.

With this guidance, Mr. Tyrues petitioned the Supreme Court for review of our decision in *Tyrues II*. *See* Pet'n for Certiorari, 2011 WL 1853076 (May 12, 2011). The question Tyrues posed to the Court did not concern equitable tolling. Rather, Tyrues asked whether a partial decision of the BVA *must* be immediately appealed "when all theories of entitlement to the benefit sought have not been resolved." *Id.*, at *10. The petition stated that:

> [O]ften there are multiple theories or legal bases to establish entitlement to compensation under what has been described as a confusing tapestry of laws and regulations. . . . There is no reason for veterans to be required to appeal a final Board decision when an alternative theory of entitlement has not been finally adjudicated by the VA. Whether a veteran is awarded under one theory of entitlement or another, the veteran's amount of compensation is not affected. It is the degree of disability that dictates the amount of compensation the United States pays for a resulting disability. Thus, the policy consideration should be on the process of determining entitlement and not on compelling appeals which could be mooted by an award under another theory.

*Id.* Despite Tyrues not mentioning equitable tolling, the Court granted Tyrues' petition, vacated *Tyrues II*, and remanded "for further consideration in light of *Henderson*." *Tyrues v. Shinseki*, 132 S. Ct. 75 (2011). The Federal Circuit in turn remanded to the Veterans Court, stating that:

> Because the Veterans Court erroneously treated the appeal deadline as jurisdictional, we vacate the Veterans Court's judgment and remand for further proceedings to determine whether the

    non-jurisdictional nature of the 120–day deadline should lead to a different result.

467 F. App'x 889, 890 (Fed. Cir. 2012).

On remand, Tyrues argued that the BVA incorrectly split his "singular claim" for service-connected lung disorder into two claims based on different theories of entitlement. He argued that claim splitting for purposes of immediate appeal was unfair and prejudicial to veterans when the remanded portion of the claim is closely related to the decided portion of the claim.

The plurality of the Veterans Court rejected Tyrues' argument, on the basis that regardless of *Henderson*, "a veteran's claims may be treated as separable on appeal." 26 Vet. App. 31, 34 (citing *Elkins v. Gober*, 229 F.3d 1369, 1373–76 (Fed. Cir. 2000)). Dissenting judges disputed that Tyrues presented more than one separable claim, and stated that *Henderson* compels revisiting "the veteran-unfriendly presumption that this [case] provides adequate notice to unrepresented claimants that they must immediately appeal a bifurcated decision or lose their appellate rights."[1] *Id.* at 35.

Today my colleagues agree with the Veterans Court plurality that appeal of a bifurcated theory of service connection is forfeited if not appealed separately, within 120 days of the partial decision. This court holds that a veteran cannot await final adjudication of all aspects or theories of his claim before appealing the portion of a decision of the BVA resolving part of the claim. The court does not address Tyrues' principal argument: that he

---

[1] Prior to 2006, Veterans were substantially restricted from obtaining legal representation at the BVA stage, adding to the inequity of charging the veteran with knowledge of this illogical and prejudicial requirement.

presented a "singular claim," inseparable from the re-manded issues and evidence. Instead, the court ratifies the unworkable requirement that interlocutory appeal is mandatory when a partial BVA decision is "sufficiently separate from the remand portion." Maj. op. at 8.

Today's decision provides no usable guidance or analysis as to when a BVA ruling is "sufficiently separate" to invoke the adopted rule. Here, Mr. Tyrues has consistently stated that his §1110 and §1117 theories are based on the same medical evidence pertaining to the same disability, and constitute a single claim of inextricably intertwined issues and related arguments. This relationship has not been refuted, or even discussed.

The court does not account for the Supreme Court's guidance in *Henderson*, that §7266(a) is intended to "promote the orderly progress of litigation"—not unfairly to remove unrepresented veterans from access to judicial review when they have diligently pursued the remand that could moot any need for appeal. The court's ruling today contravenes the principles of *Henderson*. No reason or benefit has been offered to justify this harsh departure from the final judgment rule in rulings of the BVA.

### *The final judgment rule and interlocutory appeal*

Compulsory interlocutory appeal is contrary to the federal rules, and its inflexible adoption is particularly inapt in veterans' cases, where partial remand from the BVA to the Regional Office is frequent. Under the final judgment rule, interlocutory appeals may be available in certain specified circumstances, but such appeals are generally not available absent certification by the court that there is "no just reason for delay," a determination that was not made here.

My colleagues state, citing *Elkins v. Gober*, that this court has "long held that a decision definitively denying certain benefits . . . is a 'final' decision under section

7266(a)." Maj. op. at 7. Both the Secretary and Mr. Tyrues disagree with this characterization of *Elkins*. Mr. Tyrues correctly states that *Elkins* "allow[s]" a veteran to take immediate appeal from a partial decision of the Board when fairness requires, but does not *require* such appeal if the veteran diligently pursues remand first. Tyrues Br. 17. The Secretary correctly states that this court "did not address in *Elkins* the issue raised on appeal by Mr. Tyrues" of whether interlocutory appeal of a partial BVA decision should be discretionary rather than mandatory. Gov't Br. 22 n.6.

Mr. Tyrues and the Secretary are correct. In *Elkins* this court considered the question of whether the Veterans Court must always dispose of all claims or issues presented to it, before the Federal Circuit may exercise appellate jurisdiction under 38 U.S.C. §7292. 229 F.3d at 1373. We concluded that final decision of all claims or issues is not a requirement for our review under §7292, for "a litigant's individual claims for relief may, in certain circumstances, be separable for purposes of appellate review." *Id.* We explained that various claims of a veteran's overall case "may" be treated as distinct for jurisdictional purposes when "it would be unfair to deny the veteran an immediate appeal of a final decision as to one or more of his claims simply because an additional claim is remanded for further proceedings." *Id.* at 1376.

*Elkins* is firmly rooted in administrative precedent, such as *Dewey Electronics Corp. v. United States*, 803 F.2d 650, 656 (Fed. Cir. 1986). In *Dewey* the court held that a rule requiring the full and complete decision of the Armed Services Board of Contract Appeals (ASBCA) before permitting appeal would be inconsistent with "the efficiency and flexibility generally associated with administrative proceedings." The *Elkins* court held that *Dewey* "applies with even greater force to veterans cases." 229 F.3d at 1376.

In *Dewey* the court stated that interlocutory appeal is permitted, but it did not answer the question here, of whether interlocutory appeal is mandatory. That question was raised and answered in *Brownlee v. DynCorp.*, 349 F.3d 1343 (Fed. Cir. 2003). In *Brownlee* we held that the fact that a party could have appealed a particular decision at an interlocutory stage, did not prohibit the party from raising the issue on appeal of the Board's final decision. *Id.* at 1347 ("Allowing the aggrieved party to wait for a truly final judgment before appealing furthers the purposes of . . . the doctrine of finality."). The court cited numerous authorities including Supreme Court and Circuit Court authority. *See Brownlee*, 349 F.3d at 1348 (citing *e.g., Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) and *Victor Talking Machine Co. v. George*, 105 F.2d 697 (3d Cir. 1939)).

Precedent is clear that interlocutory appeal in specified situations "although permitted, is not obligatory." *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 493 (3rd Cir. 1997) ("an interlocutory appeal from a denial of summary judgment on immunity grounds, although permitted, is not obligatory"); *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975) ("Although the preliminary injunction was appealable as of right . . . the defendants' failure to appeal did not waive their right to appeal from the final order. An interlocutory appeal is permissive rather than mandatory"); *Scarrella v. Midwest Fed. Sav. & Loan*, 536 F.2d 1207, 1209 (8th Cir. 1976) ("A party is not required to take an interlocutory appeal authorized by statute."); *Bingham Pump Co. v. Edwards*, 118 F.2d 338, 339 (9th Cir. 1941) ("appellant was not required to [immediately] appeal from the interlocutory decree" holding patent valid and infringed); *see generally* 16 Charles A. Wright et. al., Fed. Prac. & Proc. Juris. §3921 n.27 (2d ed.).

In discussing this pragmatic procedure, the Third Circuit explained that:

> A party, feeling himself aggrieved by an interlocutory decree of the kind mentioned, is given the right to appeal without awaiting a final decree, upon condition that he take his appeal within thirty days. [Section 1292], however, does not require an aggrieved party to take such an appeal in order to protect his rights, and, where it is not taken, does not impair or abridge in any way the previously existing right upon appeal from the final decree to challenge the validity of the prior interlocutory decree. The aggrieved party may, therefore, await the final determination of the case and upon appeal therefrom raise all questions involved in the case.

*Victor Talking Machine*, 105 F.2d at 699. As discussed in *Elkins*, this reasoning applies with even greater force in the context of veterans' adjudication. *Elkins*, 229 F.3d at 1376; *see Henderson*, 131 S. Ct. at 1206.

*Elkins* did not hold that any aspect decided by the BVA, among multiple claims or issues, *must* be immediately appealed to the court although other aspects were remanded to the Regional Office. We observed rather that veterans are entitled to the "flexibility generally associated with administrative proceedings" as opposed to the rules of appeal from district courts where multiple claims "must be tried together and appealed all at once" except in the specific circumstances of Rule 54(b). *Elkins*, 229 F.3d at 1375. These principles appeared in the administrative context in *Brownlee.*

The majority rejects the applicability of *Brownlee* in the veterans context, on the basis that the appeal statute in ASBCA cases states that a contractor "may" appeal an adverse decision within 120 days, whereas the veterans' appeal statute §7266(a) states that the veteran "shall" appeal "a final decision" of the Board within 120 days. Maj. op. at 11. The distinction the majority draws is not

in alignment with general federal practice, *see Brownlee*, 349 F.3d at 1348 nn.2,3. Mandatory interlocutory appeal is not required in any statute or rule. The Supreme Court permits discretionary interlocutory appeal under 28 U.S.C. §1257 despite the requirement that review "shall" be applied for within ninety days after final judgment. *See id.* at 1348 (citing *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) *and* 28 U.S.C. §2101(c)). And the Circuit Courts of Appeal generally permit discretionary interlocutory appeal under 28 U.S.C. §1292 despite the requirement that appeal "must" be filed within 30 days of entry of the judgment or order appealed from. *See* 349 F.3d at 1348 (citing *Victor Talking Machine*, 105 F.2d at 697) *and* Fed. R. App. P. 4(a)(1)(A)).

The majority also proposes to distinguish *Brownlee* on the theory that it "did not involve . . . a completed adjudication of a particular claim for relief, but only separation of liability and quantification determinations." Maj. op. at 12. However, neither did Mr. Tyrues receive a completed adjudication of his claim, for he received only a partial decision based on *one theory* of relief under §1110, while his other theory of relief under §1117 was remanded for development on related or identical evidence involving the same respiratory illness.

The rule set forth today simply requires satellite litigation of "sufficiently separable" issues, with no discernible guidance or benefit.

### *Veteran Tyrues presents only one claim for service connection*

The majority does not explain what constitutes a "sufficiently separate" decision to warrant mandatory interlocutory appeal, while it is clear that one aspect of the same claim should not require immediate separate appeal. This was the subject of this court's remand for consideration in light of *Roebuck*. In *Roebuck*, the Veterans Court held that

### 3. Requirements of a Notice of Appeal when the Board Bifurcates a Claim

Pursuant to 38 U.S.C. §7266, an appeal to this Court is commenced by the filing of a Notice of Appeal within 120 days of a final Board decision. We hold that when a claimant raises more than one theory in support of a claim during the time while that claim is still pending before VA, if the Board bifurcates those theories or arguments and addresses them in separate decisions, the time for appeal is not ripe until the Board issues a final decision denying all theories. Under those circumstances, the 120-day requirement for filing a Notice of Appeal will not begin to run until the Board has denied all theories in support of the claim that it has identified for consideration. The final resolution of a veteran's claim may be disserved by requiring the veteran to immediately appeal part of the BVA's decision, although the BVA has remanded to the Regional Office for proceedings on the same claim.

20 Vet. App. at 315–16. I encourage return to this wise ruling, which is well supported by precedent that a veteran with a single disability has only one claim, even if the veteran asserts more than one theory of entitlement to benefits for the disability. *See Schroeder v. West*, 212 F.3d 1265, 1270 (Fed. Cir. 2000) (veteran's claim for bilateral eye disorder on direct theory of service connection under §1110 was "same claim" as his claim for service connection on a presumptive theory based on exposure to Agent Orange because both were based on the same disability); *Bingham v. Nicholson*, 421 F.3d 1346, 1348 (Fed. Cir. 2005) (veteran seeking service connection for an ear condition on a direct basis and later on a presumptive basis, did not have two separate claims, but had two separate "theories" of a single claim for benefits); *Roebuck*, 20 Vet. App. at 313–14 ("although there may be

multiple theories or means of establishing entitlement to a benefit for a disability, if the theories all pertain to the same benefit for the same disability, they constitute the same claim."); *Clemons v. Shinseki*, 23 Vet. App. 1, 4 (2009) ("multiple medical diagnoses or diagnoses that differ from the claimed condition do not necessarily represent wholly separate claims").

The limitation to a single claim for benefits is not inconsistent with the understanding that service connection for certain disorders can be either direct or presumptive. *Combee v. Brown*, 34 F.3d 1039, 1043 (Fed. Cir. 1994). The veteran need only demonstrate one theory of service connection to have a "well-grounded claim." *Schroeder*, 212 F.3d at 1270-71. The BVA's 1998 ruling that Mr. Tyrues had not proven direct service connection by a preponderance of evidence was not a complete and final adjudication of his claim for a service connected lung disorder, because respiratory symptoms of Persian Gulf Syndrome are the subject of a statutory presumption of service connection. His assertion of either or both direct and presumptive theories of service connection is a claim for the same disorder. *See Bingham*, 421 F.3d at 1348 (separate theories are not separate claims). A ruling as to one theory accompanied by remand to resolve a second theory is not a complete adjudication of the claim.

The majority's position that Mr. Tyrues asserted multiple claims is incorrect. Mr. Tyrues' claim for lung disorder is the same malady for both of his theories of service connection; the only difference is the nature and burden of proof. On the theory of direct service connection, he has the burden of showing service connection by a preponderance of the evidence; on the theory of presumptive service connection, he has to show entitlement to the statutory presumption. Tyrues points out that all of the medical evidence adduced on remand related to the illness of his lungs under both theories.

### *Rule 54(b), even if viewed as applicable to BVA appeals, was not satisfied*

The majority offers analogy to Federal Rule 54(b) in support of its mandatory interlocutory appeal.[2]  However, Rule 54(b) requires the tribunal to make express findings of both "finality" of adjudication of a specific issue, and "no just reason for delay" as to that issue.  The BVA made no such findings.  Rule 54(b), for sound reason, was not relied on by the Veterans Court or the Secretary, for the BVA did not purport to meet the requirements of the Rule.

As stated in *Abney v. United States*, 431 U.S. 651, 656-57 (1977), "[t]he general principle of federal appellate jurisdiction, derived from the common law and enacted by the First Congress, requires that review of *nisi prius* proceedings await their termination by final judgment."  When justice or convenience warrants, shortcuts are available, whether under Rule 54(b) or as discussed in *Elkins*, *supra*.  Although the panel majority proposes otherwise, prior to Mr. Tyrues' case the Federal Circuit has never held that a litigant must immediately appeal

---

[2]    Rule 54(b).  **Judgment on Multiple Claims or Involving Multiple Parties.**

When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

part of an incomplete decision, or lose the right to appeal that part after final judgment.

The relevant appeal statutes are 38 U.S.C. §§7266 and 7252. Section 7266(a) requires veterans to appeal "a final decision" of the BVA within 120 days, and section 7252 grants the Veterans Court jurisdiction to review any "decision"—final or not. The Veterans Court may decline to review partial decisions of the BVA if the appealed issue is "inextricably intertwined" with an undecided issue pending before the Regional Office. *Harris v. Derwinski*, 1 Vet. App. 180, 183 (1991). None of these authorities requires mandatory interlocutory appeal by the veteran of an aspect of his case while a related aspect is remanded.

Applying Rule 54(b), requirement of explicitly finding "no just reason for delay" is separate from and in addition to issue finality. "Once having found finality, the district court must go on to determine whether there is any just reason for delay." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–10 (1980). *See iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008) ("it must be apparent, either from the district court's order or from the record itself, that there is a sound reason to justify departure from the general rule that all issues decided by the district court should be resolved in a single appeal of a final judgment.").

As explained by Professor Wright, this aspect of Rule 54(b) was added because the previous version of the rule "provided no guidance on what constituted a 'final order' so that parties lacked any reliable means of determining whether a particular court order relating to less than all of the claims was appealable." 10 Fed. Prac. & Proc. Civ. §2653 (3d ed.). This "no reason for delay" requirement is on point for veterans' cases, because it "reduces as far as possible the uncertainty and the hazard assumed by a litigant who either does or does not appeal from a [partial]

judgment." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 512 (1950). Application of Rule 54(b) without certification of "no just reason for delay" is improper.

The majority stresses the "finality" of the BVA's decision of Tyrues' theory of direct service connection and the BVA's "unequivocal appealability directives," maj. op. at 9. The majority states that the BVA provided "unchallenged clarity" about its intent to render a separately appealable ruling. *Id.* at 8. But here the BVA was not unmistakably clear or unequivocal that immediate appeal of the ruling on this theory was essential, lest the theory be forfeited on final judgment. There was no analogy to the "certification" required by Rule 54(b).

The BVA sent Mr. Tyrues generic instructions headed "Notice of Appellate Rights" and "Your Rights to Appeal our Decision." The instructions were not specific to Mr. Tyrues' case. The instructions stated that a decision granting "less than the complete benefit . . . is *appealable* to the United States Court of Veterans Appeals within 120 days from the date of mailing of notice of the decision;" that is, that the Veteran has the *right* to appeal if he receives less than was requested. *1998 Bd. op.* at 11 (emphasis added). The instructions stated that the veteran could not appeal a remand because a remand is "in the nature of a preliminary order" and "is not a final decision." *Id.* at 12–13.

Although the instructions stated that issues addressed in the BVA's "Order" section are "final," that statement was not unmistakably clear in requiring a mandatory immediate appeal. *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1221 (5th Cir. 1990) (district court must express the intent to enter a partial final judgment with "unmistakable clarity"). In Mr. Tyrues' case the issue the BVA decided was on the same respiratory disorder that was remanded. The Board simultaneously stated that there was no competent evi-

dence of a lung disorder, and that "[a]s the record stands, it is unclear whether there is medical evidence to support the veteran's claimed respiratory symptoms." *1998 Bd. op.* at 7, 9. Still, the majority rules that from these instructions veteran Tyrues would know and should have known that he must immediately appeal the denial of direct service connection, although the Board's rulings were confusing at best, if not directly inconsistent.

The Veterans Court certainly did not deem Mr. Tyrues' case one of clear and unequivocal finality by the BVA. *See* 23 Vet. App. 166 (2009) (four opinions from seven judges); 26 Vet. App. 31, 33 (2012) (three opinions from six judges). All of the Veterans Court judges recognized in their separate opinions that cases such as *Roebuck*, *Maggitt*, and *Elkins* call into question the government's interpretation of the Board's instructions to the veteran. *E.g.*, 23 Vet. App. at 174. The Secretary does not have plenary power or statutory authority to determine the appeal requirement for veterans. This departure from standard appellate practice in a manner hostile to veterans' entitlement to judicial review requires strict scrutiny, not deferential acceptance.

None of the Veterans Court opinions found "clarity" in the BVA's instructions concerning appeal. All of the judges recognized the complexities involved. *See* 23 Vet. App. at 179–80 (plurality based on "the totality of the circumstances"); *id.* at 185–86 (concurring opinion on ground that "what constitutes a 'claim' differs depending on what stage in the administrative process one is attempting to define a claim."); *id.* at 187–88 (opinion criticizing plurality for interchangeable use of "issue," "matter," and "claim" without clear definition of those terms); *id.* at 193–94 (dissenting opinion that "a Board decision does not become final until it is ripe for judicial review, regardless of the Board's desire to wash its hands of a particular theory before the claim has been fully

developed and adjudicated"). As explained in a separate opinion on remand:

> This case is not about a "mixed decision," where the Board denies one claim while remanding another. This case is about the finality of a single claim that the Board bifurcates based upon different theories. . . . The hard question presented by this case is how to handle VA's practice of bifurcating a single claim and adjudicating different theories separately. That is the question to which the system needs a clear answer.

26 Vet. App. at 35–36 (citations omitted).

I repeat that precedent cannot be reconciled with today's ruling. In *Roebuck* the Veterans Court held that "the 120-day requirement for filing a Notice of Appeal will not begin to run until the Board has denied all theories in support of the claim that it has identified for consideration." 20 Vet. App. at 315-16. In *Kirkpatrick v. Nicholson*, 417 F.3d 1361, 1365 (Fed. Cir. 2005), we explained that a remanded claim for benefits is not a "decision," let alone a final decision. In *Joyce v. Nicholson*, 443 F.3d 845, 850 (Fed. Cir. 2006), we held that review by the Federal Circuit is unavailable for a portion of a single claim when the remainder of the claim is remanded.

The court's answer today is neither clear nor correct. The court states that a BVA decision on an issue must be immediately appealed if the BVA ruling is "definitive and sufficiently separate from a remand portion," maj op. at 8, but my colleagues provide no guidance as to what this means. Here, the 1998 BVA decision was not "definitive" of Mr. Tyrues' respiratory claim, nor was it separate from the remand portion, which also addressed his respiratory symptoms. The appropriateness and utility of an inter-

locutory appeal[3] depends on the particular situation.  For example, if the Regional Office had found on remand that Tyrues is entitled to the statutory presumption of service connection, that would have resolved his claim, and the now-required interlocutory appeal would be unnecessary.  Tyrues explains the practical consequences:

> a favorable finding on the theory/claim for *undiagnosed* lung disorder would have a substantial impact on the *diagnosed* lung disorder theory/claim, most likely rendering it moot. . . .  As for medical development of the claim, one pulmonary specialist could have addressed both theories.

Tyrues Br. at 14–15 (emphases original).

Under this rule, veterans will be forced to incur the time and expense of appealing every partial decision of the BVA to preserve rights, even if such decision would be mooted by the remand aspect.  The court's ruling will be

---

[3]    The panel majority objects to the usage "interlocutory," arguing that a partial decision of a veteran's single claim is "a final decision" and "not an interlocutory decision" although the entire claim is remanded for application of a different theory of entitlement.  Maj. op. at 10.  However, the standard definition of "interlocutory" is "not constituting a final resolution of the whole controversy."  Black's Law Dictionary (9th ed. 2009).  Even Rule 54(b), from which the majority draws support, requires final decision of an entire claim, as the Supreme Court has explained: "Rule 54(b) does not apply to a single claim action . . . .  It is limited expressly to multiple claims actions in which one or more but less than all of the multiple claims have been finally decided and are found otherwise to be ready for appeal."  *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742-43 (1976).

of wide impact, for the BVA not infrequently remands aspects of a claim to the Regional Office while disposing of other aspects. Today's requirement of immediate partial appeal serves neither efficiency nor fairness, while adding complexity and cost and time to determination of veterans' concerns.

I take note of the majority's proposal that a mandatory immediate partial appeal is beneficial to the veteran because it "enables" the veteran to appeal. Maj. op. at 9. However, *Elkins* already provides the veteran with the right and opportunity to appeal. *See Elkins*, 229 F.3d at 1376 ("each 'particular claim for benefits' may be treated as distinct for jurisdictional purposes"). This case is about the requirement to immediately appeal an aspect of a claim, not the ability or authorization to immediately appeal such aspect.

The majority's holding that because a veteran *may* appeal from a partial BVA decision, he *must* immediately appeal, is not consistent with the policy embodied in the veterans' statutes, as reiterated by the Court in *Henderson*, 131 S. Ct. at 1206, that "We have long applied the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor."

### The GVR

Today's ruling strains the Court's grant of certiorari and remand of Mr. Tyrues' appeal. My colleagues set the GVR aside, seeing "no basis for now reaching a different conclusion" from the prior decision, because Mr. Tyrues did not request the remedy of "equitable tolling." Maj. op. at 6, 11. However, *Henderson* is not limited to equitable tolling. The Court's GVR of Mr. Tyrues' appeal is not reasonably construed as strictly limited to an argument that was not even included in the Tyrues cert. petition. The GVR requires our consideration of how *Henderson* relates to the reasoning of *Tyrues II*. *See United States v.*

*Holloway*, 630 F.3d 252, 258 (1st Cir. 2011) ("A Supreme Court opinion need not be directly on point to undermine one of our opinions."). Our prior reasoning that Mr. Tyrues' appeal of his argument for direct service connection was time barred because "Section 7266(a) is mandatory and jurisdictional," 631 F.3d at 1383, is negated by *Henderson*.

Mr. Tyrues' petition for certiorari raised the question of whether he should be required to immediately appeal a partial BVA decision on one of his two theories of service connection for the same disability. The Federal Circuit decision from which he petitioned had inflexibly applied the 120-day appeal period to require interlocutory appeal of a partial ruling on Mr. Tyrues' claim. The court today again imposes the 120-day time limit for the direct service connection aspect, and holds that Mr. Tyrues forfeited appeal of this aspect, although another theory of service connection for the same disability was remanded for development by the Regional Office. The consequences are as unfair as they are inefficient, warranting at least this court's discussion of its rejection of the equitable principles of *Henderson*.

This court compounds the inequity, for even as my colleagues rule that veterans must pursue the partial appeal or forfeit the issue, "the Veterans Court may decline to review the [partial] decision." Maj. op. at 8–9 (citing *Harris*, 1 Vet. App. at 183). Thus my colleagues hold that although the veteran must incur the costs and fees and delay of briefing and argument of an interlocutory appeal, the veteran may later learn that the interlocutory appeal is deemed inappropriate by the court and will not be decided.

The premises of this GVR warrant a less severe view of procedures in veteran cases. At least, the veteran should receive as much consideration as does the government. For example, in *Bingham* the government took the

opposite position from that which it argues here, arguing that direct and presumptive service connection "are two theories by which service connection can be proven . . . not two separate claims upon which an effective date must be based." *Bingham*, Gov't Br., 2005 WL 1250863, at *9. The Federal Circuit adopted that view, 421 F.3d at 1338, in conflict with today's ruling.

Today's ruling contravenes the Court's advice to apply §7266(a) as neither mandatory nor jurisdictional, and to assure orderly litigation procedures, avoiding harsh or unfair consequences to veterans. *Henderson*, 131 S. Ct. at 1204. From my colleague's ruling that the veteran must take an interlocutory appeal or forfeit appeal of that aspect, I respectfully dissent.