Citation Nr: 1546208 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 10-02 249 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for hypertension, to include as secondary to diabetes mellitus, type II.

2. Entitlement to an initial rating in excess of 20 percent for diabetes mellitus, type II, prior to January 15, 2010, and in excess of 40 percent thereafter.

3. Entitlement to a rating in excess of 60 percent for right lower extremity disability resulting from a stroke and peripheral neuropathy.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Cheryl E. Handy, Counsel


INTRODUCTION

The Veteran served on active duty from January 1966 to January 1968, including service in the Republic of Vietnam.

This matter is before the Board of Veterans' Appeals (Board) on appeal of several rating decisions issued by the Department of Veterans Affairs (VA) Regional Offices (RO) in Seattle, Washington, and Waco, Texas. The claims are currently in the jurisdiction of the Waco, Texas, RO.

A July 2007 rating decision issued by the Seattle RO, in pertinent part, granted service connection for diabetes mellitus, and assigned a 10 percent disability rating, effective January 5, 2006, the date of the Veteran's claim.

A May 2008 rating decision issued by the Waco RO, in pertinent part, denied service connection for hypertension, granted an increased disability rating for diabetes mellitus to 20 percent effective January 5, 2006, and granted service connection for the right lower extremity disability, assigning a 40 percent disability rating effective January 5, 2006.

A December 2009 rating decision issued by the Waco RO granted an increased disability rating for the right lower extremity disability to 60 percent, effective January 5, 2006. The Veteran continued his appeal.

A February 2015 rating decision issued by the Waco RO granted an increased disability rating for diabetes mellitus to 40 percent, effective January 15, 2010. The Veteran has continued his appeal, which includes the rating prior to January 15, 2010, and the period after that date.

This case was previously before the Board in September 2014, when it was remanded for further development, to include providing the Veteran with a VA examination. As the requested development has been completed, no further action to ensure compliance with the remand directive is required. Stegall v. West, 11 Vet. App. 268 (1998).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The Veteran's hypertension is not shown to be the result of service or to have been caused or aggravated by his service-connected diabetes mellitus, type II.

2. The Veteran's diabetes mellitus, type II, has been manifested by the requirement for insulin, restricted diet, and regulation of activities since the date of claim.

3. Diabetes mellitus, type II, resulting in a requirement for insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately rated has not been shown at any time during the appeals period.

4. Prior to December 5, 2014, the Veteran's right lower extremity disability resulting from a stroke and peripheral neuropathy was manifested by severe incomplete paralysis, with muscle atrophy, paresthesias, foot drop, and limited muscle movement below the knee.

5. Since December 5, 2014, the Veteran's right lower extremity disability resulting from a stroke and peripheral neuropathy has been manifested by complete paralysis of the sciatic nerve, with foot drop, no active movement of the muscles below the knee, and weakened flexion and extension of the knee. 


CONCLUSIONS OF LAW

1. The criteria for service connection for hypertension, to include as secondary to diabetes mellitus, type II, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

2. The criteria for an initial 40 percent disability rating for diabetes mellitus, type II, have been met as of the date of claim, January 5, 2006. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.119, Diagnostic Code 7913 (2015).

3. The criteria for a disability rating in excess of 40 percent for diabetes mellitus, type II, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.119, Diagnostic Code 7913 (2015).

4. The criteria for a disability rating in excess of 60 percent for right lower extremity disability resulting from a stroke and peripheral neuropathy were not met prior to December 5, 2014. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8520 (2015). 

5. The criteria for a disability rating of 80 percent for right lower extremity disability resulting from a stroke and peripheral neuropathy have been met as of December 5, 2014. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8520 (2015). 



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA)

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations require VA to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013).

In June 2007 and November 2007, the RO sent the Veteran letters, prior to adjudication of his claims, providing notice, which satisfied the requirements of the VCAA. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). No additional notice is required. 

Next, VA has a duty to assist the Veteran in the development of claims. This duty includes assisting him in the procurement of pertinent treatment records and providing an examination when necessary. 38 C.F.R. § 3.159.

All pertinent, identified medical records have been obtained and considered. The Veteran was afforded VA examinations in December 2007, November 2009, and December 2014. There is no argument or indication that the examinations or opinions are inadequate. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). 

As VA satisfied its duties to notify and assist the Veteran, no further notice or assistance is required. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §3.159.

Principles of Service Connection

Generally, to establish a right to compensation for a present disability, a Veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). All three elements must be established by competent and credible evidence in order that service connection may be granted.

Service connection may be established on a secondary basis for a disability that is proximately due to, the result of, or aggravated by a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires (1) competent evidence (a medical diagnosis) of current chronic disability; (2) evidence of a service-connected disability; and (3) competent evidence that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310(a); see also Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). 

Evidentiary Standards 

VA must give due consideration to all pertinent medical and lay evidence in a case where a Veteran is seeking service connection. 38 U.S.C.A. § 1154(a). 

Competency is a legal concept in determining whether medical or lay evidence may be considered, in other words, whether the evidence is admissible as distinguished from weight and credibility, a factual determination going to the probative value of the evidence, that is, does the evidence tend to prove a fact, once the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997). 

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159.

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer a medical diagnosis, statement, or opinion. 38 C.F.R. § 3.159.

The Board, as fact finder, must determine the probative value or weight of the admissible evidence. Washington v. Nicholson, 19 Vet. App. 362, 369 (2005) (citing Elkins v. Gober, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("Fact-finding in veterans cases is to be done by the Board")). 

When there is an approximate balance of positive and negative admissible evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107(b). 

Facts and Analysis

The Veteran's service treatment records show no evidence of complaints, symptoms, or treatment related to elevated blood pressure in service. The Veteran was first diagnosed with hypertension in 1985, nearly 20 years after service separation. It is his contention that the hypertension was caused or aggravated by his service-connected diabetes mellitus, type II.

At the initial VA examination in December 2007, the examiner noted a long history of diabetes mellitus treated with insulin. The examiner offered the opinion that the Veteran's hypertension was more likely than not related to his diabetes. In a follow-up addendum opinion provided in March 2008, the examiner stated that the Veteran's hypertension was less likely than not related to his diabetes, but did not provide any rationale. No explanation for the two differing opinions was provided.

The VA examiner in December 2014 offered the opinion that the Veteran's hypertension was not incurred in service, because there was no evidence of elevated blood pressure readings in service and the initial diagnosis of the condition occurred nearly 20 years after service. The examiner further stated that the Veteran's hypertension was not the result of his service-connected diabetes mellitus, nor was it aggravated by the disability. The examiner based that opinion on the fact that there is no evidence that the Veteran has ever had renal disease connected to his diabetes or his hypertension; VA regulations state that to attribute causation of hypertension to diabetes mellitus, a concurrent diagnosis of renal failure is necessary. Finally, the examiner noted that the Veteran's hypertension was not shown to be aggravated by diabetes based on the fact that his hypertension was historically quite stable, without evidence of cardiac, renal, peripheral vascular, or central nervous system issues.

After a review of the evidence, the Board finds that the weight of the evidence is against a finding that the Veteran's hypertension was incurred in service or caused thereby. In addition, the evidence does not show that the Veteran's hypertension was caused by his service-connected diabetes mellitus, where there is no evidence of renal failure to precipitate hypertension. Nor does the evidence show that the Veteran's hypertension has been aggravated beyond the normal course of the condition by his service-connected diabetes mellitus, where his hypertension is shown to be stable and without any resulting complication.

The Board notes and acknowledges the clear evidence that the Veteran suffered a stroke in 1998, which is attributed at least in part to hypertension. Inasmuch as the evidence has also shown that the stroke was caused in part by the Veteran's diabetes mellitus, the residuals of the stroke are service-connected. However, the fact that the stroke residuals are service-connected is not in itself a basis for granting service connection to hypertension, where the stroke was partially the result of rather than the cause of the Veteran's hypertension. 

The Board also acknowledges the Veteran's assertions and sincere belief that his hypertension resulted from his diabetes mellitus. However, the Veteran is not shown to be competent to provide a medical opinion with respect to the cause of his hypertension, this requires specialized medical training to understand the complexities of the cardiovascular system. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); 38 C.F.R. § 3.159(a). 

In this instance, the original examiner's opinion with respect to the cause of the Veteran's hypertension is equivocal, in that it was initially favorable and then became unfavorable, with no explanation provided for either opinion. As such, the Board cannot rely upon those findings for adjudicatory purposes. The only other medical opinion provided is that of the December 2014 VA examiner, which notes that the absence of renal failure in association with hypertension is against the argument for a causal relationship between diabetes mellitus and hypertension. Therefore, the Board finds that the evidence is against the claim of service connection for hypertension on a secondary basis and the benefit-of-the-doubt rule does not apply. 38 C.F.R. § 5107(b).

Assigning Disability Ratings

A disability rating is determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." Hart v. Mansfield, 21 Vet. App. 505, 510 (2007). In this instance, staged ratings were assigned by the RO for the Veteran's diabetes mellitus, type II. However, the Board finds that a single rating for the entire appeals period is more consistent with the Veteran's disability picture. With respect to the Veteran's right lower extremity disability, on the other hand, staged ratings are warraned as described more fully below.

Diabetes Mellitus

Diagnostic Code 7913 provides ratings for diabetes mellitus. Diabetes mellitus requiring insulin and restricted diet, or; oral hypoglycemic agent and restricted diet, is rated 20 percent disabling. Diabetes mellitus requiring insulin, restricted diet, and regulation of activities is rated 40 percent disabling. Diabetes mellitus requiring insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately rated, is rated 60 percent disabling. Diabetes mellitus requiring more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately rated, is rated 100 percent disabling. 38 C.F.R. § 4.119.

Rating Higher than 20%

The Veteran was diagnosed with diabetes mellitus in 1979 and has been treated for the condition with insulin injections almost from the beginning. At the time he filed his claim in January 2006, his disability had achieved a measure of consistency in terms of the treatment prescribed and the symptoms manifested. The VA treatment records reflect that although the Veteran occasionally felt the need to adjust his insulin dosage to address specific acute symptoms, he reported basically the same symptoms since before the date of claim.

The Veteran filed his Substantive Appeal (VA Form 9) on January 15, 2010, setting forth the reasons he felt his disability warranted a disability rating higher than 20 percent. Among the reasons he listed was the need to refrain from strenuous activities to prevent abrupt changes in blood pressure, which could result in a diabetic coma. Based on this statement, the RO assigned January 15, 2010, as the effective date for the grant of 40 percent disability rating, describing it as the date the Veteran first contended that regulation of activities was necessary.

The Board notes that the Veteran's disability picture has been consistent throughout the appeals period and that the medical evidence shows a consistent concern with abrupt changes in blood sugar readings from prior to the date of claim. Therefore, the Board finds that the appropriate effective date for the assigned 40 percent disability rating is the date of claim, January 5, 2006. 38 C.F.R. § 4.119, Diagnostic Code 7913.

Rating Higher than 40%

In addition to the requirements for a 40 percent disability rating, a still higher, or 60 percent disability rating would require evidence of episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately rated. The evidence does not show the need for twice a month visits to a diabetic care provider, or hospitalizations due to ketoacidosis or hypoglycaemic reactions. The only complication of diabetes shown which is not separately compensable is minimal diabetic retinopathy.

Specifically, the VA examination report of December 2007 noted that since diagnosed with diabetes, the Veteran had been seen in the emergency room for hypoglycemia on four occasions, the most recent being in 2003, and had never been hospitalized for hypoglycemia or ketoacidosis. The November 2013 included the Veteran's denial of hospitalizations for either ketoacidosis or hypoglycaemic reactions. At the December 2014 VA examination, the Veteran reported visiting his diabetic care provider less than twice a month and having no hospitalizations related to hypoglycemia or ketoacidosis in the previous year. This report is consistent with the Veteran's records of treatment at VA.

The Board notes that the Veteran was treated in the emergency room for a diabetic reaction in April 2012. However, this treatment was the result of an episode which occurred when the Veteran was in the hospital for other reasons and was not consistent with his normal disability picture of hypoglycemia episodes addressed at home without the need for professional medical treatment.

The Board also notes the Veteran's statement in January 2010 that he experiences repeated hypoglycemic reactions and that the only reason he had not been hospitalized was that his wife, his "daily care provider," administered the glucose necessary to avert a coma. The Veteran noted that previously he had been treated in the hospital on four occasions and that thereafter his wife had been trained to administer the necessary glucose injection. The Board accepts these assertions, but notes that the Veteran's treatment providers have not considered the facts sufficient to warrant more frequent medical visits to monitor his diabetes. As such, the Board finds that the care provided by the Veteran's wife does not more nearly approximate a disability picture in which the Veteran required hospitalization for his hypoglycemic reaction.

Based on the evidence discussed above, which does not show a need for visits to the Veteran's diabetic care provider twice a month or more and does not show that the Veteran has ever been hospitalized for hypoglycemic episodes or ketoacidosis, the Board finds that the rating criteria for a 60 percent disability rating have not been met at any time during the appeals period. 38 C.F.R. § 4.119, Diagnostic Code 7913.

Right Leg

Diagnostic Code 8520 provides ratings for paralysis of the sciatic nerve. Diagnostic Code 8520 provides that mild incomplete paralysis is rated 10 percent disabling; moderate incomplete paralysis is rated 20 percent disabling; moderately severe incomplete paralysis is rated 40 percent disabling; and severe incomplete paralysis, with marked muscular atrophy, is rated 60 percent disabling. Complete paralysis of the sciatic nerve, the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost, is rated 80 percent disabling. 

Diagnostic Code 8620 provides a rating for neuritis of the sciatic nerve. Diagnostic Code 8720 provides a rating for neuralgia of the sciatic nerve. 

The term "incomplete paralysis" with this and other peripheral nerve injuries indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. The ratings for the peripheral nerves are for unilateral involvement; when there is bilateral involvement, the VA adjudicator is to combine the ratings for the peripheral nerves, with application of the bilateral factor. 38 C.F.R. § 4.124a. 

Prior to December 5, 2014

The Veteran's right leg disability has been rated as 60 percent disabling as of the date of claim in 2006, based on evidence of severe incomplete paralysis of the sciatic nerve. The right leg disability is due to the combination of the residuals from the Veteran's stroke in 1998 and peripheral neuropathy as a complication of his diabetes; both causes of the disability are currently service-connected.

At the December 2008 VA examination to determine the Veteran's ability to work, the examiner noted that there was no significant muscle atrophy in either leg. The Veteran had a limp in his right leg when walking and demonstrated deep tendon reflexes on the right side which were different than those on the left. The Veteran used an AFO splint and a cane to walk, and was limited to short distances with no prolonged standing. He reported having become more prone to fall in the recent past and stated that his right knee seemed to give way unexpectedly. At that time, sensory perception was normal in all extremities.

At the November 2009 VA examination, the Veteran's ankle reflexes were negative and he had difficulty walking without a brace. With the brace on, he was able to walk but still had difficulty due to right side weakness. Measurements showed evidence of muscle atrophy in the right leg, with a difference of one inch in circumference compared with the left leg. There was also some decreased sensitivity to vibratory sensation in his legs.

Based on the evidence of record, prior to December 5, 2014, the Veteran's disability picture with respect to his right leg disability was one of severe but incomplete paralysis. Marked atrophy was shown, with the nearly one inch circumferential difference between right and left legs, as was foot drop requiring the use of a brace and a cane. However, the 2008 and 2009 examinations did not show muscle weakness in the flexion of the knee, and the Veteran still maintained the ability to actively move his muscles below his knee. As such, the paralysis in the sciatic nerve was not shown to be complete. 38 C.F.R. § 4.124, Diagnostic Code 8520.

As of December 5, 2014

The December 5, 2014 VA examination included an assessment of the Veteran's muscle strength and reflexes, as well as sensory perception, with respect to the right knee and right ankle. The Veteran experienced moderate paresthesias in the right leg, with decreased sensation in the right ankle and foot. The examiner described foot drop requiring constant use of a brace and a cane, as well as 3 cm of atrophy compared with the left leg. There was decreased strength of both flexion and extension in the knee to the point where movement against weakness was not possible. In addition, the Veteran's right ankle was noted to have muscle weakness to the point that there was visible muscle response, but no ability to voluntarily move the right foot.

Based on the above findings, the Board concludes that as of December 5, 2014, the Veteran's disability picture with respect to his right leg disability is one of complete paralysis of the sciatic nerve. As such, the highest schedular, or 80 percent disability rating, is appropriate. 38 C.F.R. § 4.124a, Diagnostic Code 8520.

Extraschedular Rating

Although the Board is precluded by regulation from assigning extraschedular ratings under 38 C.F.R. § 3.321(b)(1) in the first instance, the Board is not precluded from considering whether the case should be referred to the Director of VA's Compensation and Pension Service.

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular rating for a service-connected disability is inadequate. There must be a comparison between the level of severity and symptomatology of the service-connected disability with the established criteria.

If the criteria reasonably describe the Veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Peake, 22 Vet. App. 111 (2008).

Here, the rating criteria reasonably describe the Veteran's disability levels and symptomatology with respect to both diabetes mellitus and right leg disability. The rating criteria allow for still higher ratings to be assigned where there is evidence of increased disability, as shown by the assignment of staged ratings for the right leg disability. While the rating criteria do not include a higher schedular rating for paralysis of the sciatic nerve, the Veteran's disability picture is captured by the criteria and only amputation would represent a greater disability of the right leg, and the law specifically provides for a rating in such circumstances. As the disability pictures are contemplated by the Rating Schedule, the assigned schedular ratings are adequate and referral for extraschedular consideration is not required under 38 C.F.R. § 3.321(b)(1).


 (CONTINUED ON NEXT PAGE)






ORDER

Entitlement to service connection for hypertension is denied.

Entitlement to an initial disability rating of 40 percent for diabetes mellitus, type II, as of January 5, 2006, is granted.

Entitlement to a disability rating greater than 40 percent for diabetes mellitus, type II, is denied.

Entitlement to a disability rating greater than 60 percent for right lower extremity disability resulting from a stroke and peripheral neuropathy prior to December 5, 2014, is denied.

Entitlement to a disability rating of 80 percent for right lower extremity disability resulting from a stroke and peripheral neuropathy is granted as of December 5, 2014.




____________________________________________
Eric S. Leboff
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs